Sean K. Claggett, Esq.
Nevada Bar No. 8407
Brian Blankenship, Esq.
Nevada Bar No. 11522
Benjamin Reber, Esq.
Nevada Bar No. 16968
Austin T. Barnum, Esq.
Nevada Bar No. 15174
CLAGGETT & SYKES LAW FIRM
4101 Meadows Lane, Ste. 100
Las Vegas, Nevada 89107
(702) 655-2346 – Telephone
(702) 655-3763 – Facsimile
sclaggett@claggettlaw.com
brian@claggettlaw.com
benjamin@claggettlaw.com
abarnum@claggettlaw.com

Josef M. Karacsonyi, Esq.
Nevada Bar No. 10634
Sabrina M. Dolson, Esq.
Nevada Bar No. 13105
DICKERSON KARACSONYI LAW GROUP
1645 Village Center Cir. Ste. 161
Las Vegas, Nevada 89134
(702) 388-8600 - Telephone
(702) 338-0210 - Facsimile
josef@thedklawgroup.com
sabrina@thedklawgroup.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| L.L., a minor by and through her parents, DANIELLE B. BUCKLAND and HEBER C. LANE; | Case No. 2:26-cv-00616-JAD-DJA |
| Plaintiffs, | |
| v. | **STIPULATION AND ORDER TO FILE FIRST AMENDED COMPLAINT** |
| CLARK COUNTY SCHOOL DISTRICT; ROBERTA MCINTYRE, individually and in her capacity as | |

- 1 -

Plaintiff's former teacher; MONIQUE CLEVELAND, individually and in her capacity as Plaintiff's former teacher; DOES I-X, and ROE BUSINESS ENTITIES XI-XX, inclusive,

Defendants.

COMES NOW Plaintiff, L.L., a minor by and through her natural parents, DANIELLE B. BUCKLAND and HEBER C. LANE, by and through their attorneys of record, CLAGGETT & SYKES LAW FIRM and DICKERSON KARACSONYI LAW GROUP; Defendants, CLARK COUNTY SCHOOL DISTRICT and MONIQUE CLEVELAND, by and through their attorneys of record, OLSON CANNON & GORMLEY; and Defendant ROBERTA MCINTYRE, by and through her attorneys of record, GARIN LAW GROUP, hereby stipulate that Plaintiff shall be allowed to file an Amended Complaint.

Parties stipulate and agree to the filing of an amended complaint pursuant to Federal Rules of Civil Procedure 15(a)(2). A copy of Plaintiff's Amended Complaint is attached hereto as **Exhibit 1**.

| DATED this 22nd day of April 2026 | DATED this 22nd day of April 2026 |
|---|---|
| */s/ Brian Blankenship* | */s/ Lisa J. Zastrow* |
| Brian Blankenship, Esq. Nevada Bar No. 11522 *Attorneys for Plaintiff* | Lisa J. Zastrow, Esq. Nevada Bar No. 9727 *Attorney for Defendant Roberta McIntyre* |

- 2 -

DATED this 22nd day of April 2026

*/s/ Thomas D. Dillard, Jr.*

Thomas D. Dillard, JR., Esq.
Nevada Bar No. 6270
*Attorneys for Defendants*
*Clark County and Monique Cleveland*

## ORDER

Based on the foregoing stipulation and good cause appearing:

**IT IS HEREBY ORDERED** that Plaintiffs may file the attached First

Amended Complaint.

**IT IS SO ORDERED.**

_____
UNITED STATES MAGISTRATE JUDGE

Dated:____4/23/2026_____

- 3 -

# EXHIBIT 1

Sean K. Claggett, Esq.
Nevada Bar No. 8407
Brian Blankenship, Esq.
Nevada Bar No. 11522
Benjamin Reber, Esq.
Nevada Bar No. 16968
Austin T. Barnum, Esq.
Nevada Bar No. 15174
CLAGGETT & SYKES LAW FIRM
4101 Meadows Lane, Ste. 100
Las Vegas, Nevada 89107
(702) 655-2346 – Telephone
(702) 655-3763 – Facsimile
sclaggett@claggettlaw.com
brian@claggettlaw.com
benjamin@claggettlaw.com
abarnum@claggettlaw.com

Josef M. Karacsonyi, Esq.
Nevada Bar No. 10634
Sabrina M. Dolson, Esq.
Nevada Bar No. 13105
DICKERSON KARACSONYI LAW GROUP
1645 Village Center Cir. Ste. 161
Las Vegas, Nevada 89134
(702) 388-8600 - Telephone
(702) 338-0210 - Facsimile
josef@thedklawgroup.com
sabrina@thedklawgroup.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| L.L., a minor by and through her parents, DANIELLE B. BUCKLAND and HEBER C. LANE; | Case No. 2:26-cv-00616-JAD-DJA |
| Plaintiffs, | **FIRST AMENDED COMPLAINT** |
| v. | **Jury Demand** |
| CLARK COUNTY SCHOOL DISTRICT; ROBERTA MCINTYRE, individually and in her capacity as | |

- 1 -

Plaintiff's former teacher; MONIQUE CLEVELAND, individually and in her capacity as Plaintiff's former teacher; DOES I-X, and ROE BUSINESS ENTITIES XI-XX, inclusive,

Defendants.

COMES NOW Plaintiffs, L.L., a minor by and through her natural parents, DANIELLE B. BUCKLAND and HEBER C. LANE, by and through their attorneys of record, CLAGGETT & SYKES LAW FIRM and DICKERSON KARACSONYI LAW GROUP, and bring their causes of action against Defendants, CLARK COUNTY SCHOOL DISTRICT; ROBERTA MCINTYRE, individually and in her capacity as Plaintiff's former teacher; MONIQUE CLEVELAND, individually and in her capacity as Plaintiff's former teacher; DOES I-X; and ROE BUSINESS ENTITIES XI-XX, inclusive, and each of them, and alleges as follows:

## JURISDICTION, VENUE, AND PARTIES

1.      This Court has jurisdiction over this matter under NRS 14.065 and NRS 4.370(1), as the facts alleged occurred in Clark County, Nevada, and involve an amount in controversy in excess of $15,000.00. Venue is proper pursuant to NRS 13.040, as Defendants, or any one of them, resided in Clark County, Nevada, at the commencement of this action.

2.      At all times relevant herein, Plaintiff L.L. was and is a resident of Clark County, Nevada.

- 2 -

3. At all times relevant herein, Plaintiff Danielle B. Buckland (hereinafter "Plaintiff" or "Danielle") was and is a resident of Clark County, Nevada.

4. At all times relevant herein, Plaintiff Heber C. Lane (hereinafter "Plaintiff" or "Heber") was and is a resident of Clark County, Nevada.

5. Upon information and belief, at all times relevant herein, Defendant Clark County School District (hereinafter "Defendant" or "CCSD"), was and is a division of the County of Clark, a political subdivision of the State of Nevada, and is not immune from suit under NRS 41.031.

6. At all times relevant herein, L.L. attended Robert E. Lake Elementary School (hereinafter "Lake Elementary School"), a school within the CCSD.

7. Upon information and belief, Defendant ROBERTA MCINTYRE ("Defendant" or "McIntyre") is and was at all times relevant hereto a resident of Clark County, Nevada.

8. At all times relevant to the allegations in this Complaint, McIntyre was acting as a Substitute on Special Assignment (SOSA (i.e., substitute teacher) in L.L.'s classroom.

9. Upon information and belief, Defendant MONIQUE CLEVELAND, ("Defendant" or "Cleveland") is and was, at all times relevant hereto, a resident of Clark County, Nevada.

10. At all times relevant to the allegations in this Complaint, Cleveland was acting as a teacher's aide in L.L.'s classroom.

- 3 -

11.     Plaintiffs do not know the true names of Defendants Does I through X and sue said Defendants by fictitious names. Upon information and belief, each of the Defendants designated herein as Doe are directors, employees, or agents of Defendant CCSD who acted negligently, carelessly, or recklessly in the control, management, and/or maintenance of school and teaching/educational operations described herein and any and all people who were involved in the incidents described below. The true names, identities, or capacities, whether individual or otherwise, of Defendants DOES I-X are presently unknown. Plaintiffs will seek leave of the Court to amend this Complaint to substitute the true and correct names for these fictitious names upon learning that information.

12.     Plaintiffs do not know the true names of Defendants Roe Business Entities XI through XX and sue said Defendants by fictitious names. Upon information and belief, each of the Defendants designated herein as Roe Business Entities XI through XX, are predecessors-in-interest, successors-in-interest, and/or agencies otherwise in a joint venture with, and/or serving as an alter ego of, any and/or all Defendants named herein; and/or are entities responsible for the supervision of the individually named Defendants at the time of the events and circumstances alleged herein; and/or are entities employed by and/or otherwise directing the individual Defendants in the scope and course of their responsibilities at the time of the events and circumstances alleged herein; and/or are entities otherwise contributing in any way to the acts complained of and the damages alleged to have been suffered by the Plaintiffs herein. Upon information and belief, each of the Defendants designated as a Roe Business Entity is in some

- 4 -

manner negligently, vicariously, and/or statutorily responsible for the events alleged in this Complaint and actually, proximately, and/or legally caused damages to Plaintiffs. Plaintiffs will seek leave of the Court to amend this Complaint to substitute the true and correct names for these fictitious names upon learning that information.

13. Upon information and belief, at all times relevant herein, Defendants, and each of them, were the apparent ostensible principals, principals, apparent ostensible agents, agents, apparent ostensible servants, servants, apparent ostensible employees, employees, apparent ostensible assistants, assistants, apparent ostensible consultants, and consultants of their Co-Defendants, and were as such acting within the course, scope, and authority of said agency and employment, and that each of the Defendants, as aforesaid, when acting as a principal, was negligent, including, but not limited to, in the hiring, training, retention, and supervision of each and every other Defendant as an agent, servant, employee, assistant, and consultant.

14. Upon information and belief, every act or omission of the Defendants and their apparent ostensible principals, principals, apparent ostensible agents, agents, apparent ostensible servants, servants, apparent ostensible employees, employees, apparent ostensible assistants, assistants, apparent ostensible consultants, and consultants of their Co-Defendants, whether or not within the scope of their agency, was ratified by the other remaining Defendants.

/ / /

/ / /

- 5 -

## GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

15.     Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporate the same herein by reference.

16.     CCSD is and was a recipient of federal funding for its educational programs, activities and services. These programs include the subsidized school lunch program as well as funding for special education.

17.     At all times Defendant Roberta McIntyre was acting as an employee of CCSD and under color of law and/or authority.

18.     At all times Defendant Monique Cleveland was acting as an employee of CCSD and under color of law and/or authority.

19.     L.L. is and was, at all times material to the allegations of the Complaint, entitled to receive full and equal access to a free and appropriate public education through the CCSD.

20.     At all times relevant hereto, L.L. was a six-year-old girl who suffers from severe Autism Spectrum Disorder and is a qualified individual within the meaning of all applicable statutes, including Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the American with Disabilities Act, 42, U.S.C. § 12131 and NRS 613.310.

21.     During the 2023-2024 academic school year, L.L. was attending Lake Elementary School. During that time, CCSD assigned multiple classroom teachers to teach, supervise, and oversee L.L.'s class at Lake Elementary School.

22.     While at Lake Elementary School, L.L was the victim of severe abusive practices inflicted upon her, including but not limited to, those described

herein by different CCSD employees and/or personnel, all by and under the authority, direction, or control of CCSD.

23. Upon information and belief, during the 2023-2024 academic school year, Roberta McIntyre ("McIntyre") was employed by CCSD and worked as a substitute teacher at Lake Elementary School.

24. Upon information and belief, on or about January 30, 2024, McIntyre kicked a student to the ground as she chastised the child's behavior.

25. Upon information and belief, other CCSD employees witnessed and knew of the incident. At least one other employee, Monique Cleveland ("Cleveland"), discussed the incident with McIntyre.

26. Cleveland, who witnessed the abuse, was a mandatory reporter pursuant to NRS 432B.220 but failed to report McIntyre's abuse to anyone.

27. Upon information and belief, administrators at the school, CCSD, and/or a policymaker for CCSD knew of McIntyre kicking a student to the ground and chastising the student's behavior and failed to take reasonable steps to remove McIntyre, re-train McIntyre, and/or discipline McIntyre for these actions.

28. On or about January 31, 2024, McIntyre was assigned as the substitute teacher for L.L.'s classroom.

29. On January 31, 2024, L.L. was a six-year-old girl with severe Autism Spectrum Disorder.

30. Severe Autism Spectrum Disorder manifests itself through specific patterns and/or actions related to social interactions, communication styles, and behavioral responses to the student's environment.

31.     Upon information and belief, substitute teachers and employees working in a special education classroom, such as McIntyre and Cleveland, receive training on the proper methods for responding to students with severe Autism Spectrum Disorder.

32.     On or about January 31, 2024, L.L., exhibiting behaviors consistent with her severe Autism Spectrum Disorder, climbed on top of a classroom table.

33.     McIntyre began shouting at L.L. to get off the table.

34.     While L.L. stood on the table, McIntyre grabbed the table and thrust it into the air, launching L.L. and causing her to fall onto the floor.

35.     Upon information and belief, McIntyre flipped the table with enough force that the table broke when it hit the ground.

36.     L.L. was left on the floor, crying and clutching her knee in pain.

37.     Cleveland witnessed this abuse and, despite being a statutory mandatory reporter, failed to intervene or report the incident.

38.     Upon information and belief, later that same day, L.L., again exhibiting behaviors consistent with her severe Autism Spectrum Disorder, was lying on the floor when McIntyre began yelling at her to get up.

39.     When L.L. did not immediately stand up, another form of her severe Autism Spectrum Disorder manifesting in the classroom environment, McIntyre grabbed L.L. by the hair and pulled her up.

40.     McIntyre taunted L.L. as she lifted her by her hair.

41.     L.L. began screaming from the pain before McIntyre released her grip on L.L.'s hair.

- 8 -

42. Cleveland again witnessed this abuse and, despite being a statutory mandatory reporter, failed to intervene or report the incident.

43. Upon information and belief, later that same day, Cleveland left McIntyre alone in the classroom with L.L. and the other students.

44. Upon returning to the classroom, Cleveland and another CCSD employee witnessed McIntyre trying to force L.L. to wear a backpack to get L.L. to remain seated. Upon information and belief, McIntyre had filled the backpack with iPads and headphones until it weighed approximately 25 – 30 pounds.

45. As McIntyre struggled with L.L., attempting to force her to remain seated, McIntyre caused L.L. to fall off her chair and onto the floor.

46. McIntyre then stood over L.L. and threw the heavy backpack at L.L., hitting her in the face, neck, and chest.

47. Upon information and belief, McIntyre acted in this way because L.L. manifested normal behaviors consistent with her severe Autism Spectrum Disorder, and McIntyre did not like and did not perceive the behaviors as desirable for her classroom.

48. Cleveland again witnessed this abuse and, despite being a statutory mandatory reporter, failed to intervene or report the incident.

49. The other CCSD employee who was in the classroom reported the incident to the Lake Elementary School administration.

50. On February 8, 2024, McIntyre was charged with felony Child Abuse, Neglect, or Endangerment arising out of the January 31, 2024, abuse of L.L.

51. On January 6, 2025, McIntyre pleaded guilty to charges of Child Abuse, Neglect, or Endangerment (Gross Misdemeanor). A true and correct copy of the Amended Information is attached hereto as **Exhibit 1** and is fully incorporated herein. A true and correct copy of the Guilty Plea Agreement is attached hereto as **Exhibit 2** and is fully incorporated herein. A true and correct copy of the Judgment of Conviction (Plea of Guilty) is attached hereto as **Exhibit 3** and is fully incorporated herein.

52. Upon information and belief, McIntyre had previously committed acts of corporal punishment and/or physical abuse against students and/or other persons, and CCSD knew of these prior incidents.

53. The abuse and beatings administered by McIntyre on L.L. served no legitimate educational or other purpose, but instead were inflicted solely to punish and humiliate L.L., as a child with a disability., and occurred because of L.L.'s severe Autism Spectrum Disorder.

54. Additionally, upon information and belief, other complaints of similar conduct have been raised previously against CCSD.

55. For example, in 2019, a complaint was filed against CCSD alleging strikingly similar issues to those in this case (Joshua Wahrer, Jr., v. Clark County School District, et. al., Case No. A-19-794103-C). In that case, CCSD was alleged to have negligently assigned a teacher that placed a six-year-old with severe autism spectrum disorder in harm's way. The autistic child was allegedly beaten by CCSD employees on multiple occasions, and despite other CCSD employees knowing about it, no actions were taken to prevent further abuse.

- 10 -

56. Further examples include, but are not limited to the following reported instances of misconduct known to CCSD, its administrators, the CCSD Board of Trustees, and/or a policymaker for CCSD:

a. "The Clark County School District Board of Trustees agreed to pay a $2 million settlement after a teacher was accused of abusing a child with disabilities." https://www.8newsnow.com/news/local-news/ccsd-approves2m-settlement-after-teacher-accused-of-abusing-child-with-disabilities/ (Posted: Aug 24, 2023 / 11:26 PM PDT; Updated: Aug 25, 2023 / 08:30 AM PDT).

b. "The Clark County School Board is expected to vote on a settlement of nearly $10 million in a 2018 incident involving an autistic 6-year-old boy who was struck with a stick as punishment for taking off his shoes." https://www.8newsnow.com/news/local-news/ccsd-to-vote-on-9-95-millionsettlement-after-autistic-boy-struck-by-teacher-in-2018/ (Nov 2, 2023 / 06:45 PM PDT; Updated: Nov 3, 2023 / 08:08 AM PDT).

c. "A classroom aide told police she saw Carter hit JJ about five times for taking his shoes off and only stopped after the last swing broke the stick. The aide said she recalled the teacher saying, 'I have more of those.'" Id. "Clark County School District early childhood and special education teacher is facing charges after being accused of harming autistic students on three separate occasions." https://www.ktnv.com/news/crime/arrest-report-ccsdteacher-accused-of-abusing-autistic-students-at-elementary-school (Posted 5:08 PM, Mar 20, 2024).

d. "A Clark County School District substitute has been arrested on charges of abusing special needs children." https://www.ktnv.com/news/crime/ccsdsubstitute-teacher-arrested-on-charges-of-abusing-special-needs-students (5:53 PM, Mar 25, 2024).

57. Upon information and belief, CCSD knew or should have known of prior similar incidents and a pattern of physical abuse directed at special needs kids.

58. Upon information and belief, the action of inflicting corporal punishment on young, non-verbal children with disabilities has been followed and

- 11 -

condoned by the Defendants, and each of them, and are practices which are still pursued and condoned by the Defendants.

59.    Upon information and belief, the above-described pattern and practice of punishment methods used against L.L. by CCSD and its employees are not appropriate to achieve educational goals, and instead result in lasting and irreparable damage to the child.

## FIRST CLAIM FOR RELIEF

### (Assault)

### Against Clark County School District and Roberta McIntyre

60.    Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporate the same herein by reference.

61.    CCSD's employee, McIntyre, acted intentionally, maliciously, and unlawfully, to cause L.L. to feel an apprehension of harmful or offensive contact, which was at no time permitted by L.L., and L.L. experienced an apprehension of imminent harmful and offensive contact.

62.    After being thrown to the ground by McIntyre, L.L. was observed lying on the floor in a defensive attempt to avoid McIntyre, when McIntyre approached twice in a threatening manner, one time grabbing L.L. by the hair and pulling her up. Later, after falling off her chair because of the heavy backpack McIntyre forced L.L. to wear, McIntyre stood over L.L. and threw the backpack at her face and chest. Each instance putting L.L. in apprehension of harmful and offensive contact.

- 12 -

63. CCSD is liable for McIntyre's conduct as her conduct: (1) was not an independent venture; (2) was committed in the course of the very task assigned to her (discipline and maintaining order in an educational environment); and (3) was reasonably foreseeable under the facts and circumstances of the case considering the nature and scope of her employment.

64. CCSD's and McIntyre's assault is an actual and proximate or legal cause of L.L.'s injuries. L.L. thereby experienced great pain and anxiety to her body and mind, sustaining injuries and general damages in excess of Fifteen Thousand Dollars ($15,000.00).

65. As a further actual and proximate or legal result of CCSD's and McIntyre's assault, L.L. underwent medical treatment and incurred past medical and/or incidental expenses. L.L. may also require medical treatment in the future due to CCSD's and McIntyre's assault and may incur future medical and/or incidental expenses. The exact amount of such past and future damages is unknown at this present time, but L.L. alleges that she has suffered and/or will suffer special damages in excess of Fifteen Thousand Dollars ($15,000.00).

66. The acts, conduct, and omissions of CCSD and its employee as alleged throughout this Complaint were fraudulent, willful, malicious, and oppressive, and were done with a conscious disregard for the rights and safety of L.L. and other students.

67. The Defendants' conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary, decent people, and was carried on by the Defendants with willful and conscious disregard for the safety

- 13 -

of L.L. and other students in the State of Nevada, entitling L.L. to exemplary and punitive damages.

68.    The outrageous and unconscionable conduct of the Defendants warrants an award of exemplary and punitive damages in an amount appropriate to punish the Defendants and make an example of them, and to deter similar conduct in the future.

69.    The acts of the Defendants complained of herein were willful, malicious, fraudulent, oppressive, and done in conscious disregard of L.L.'s rights, and L.L. is entitled to exemplary and punitive damages pursuant to NRS Chapter 42 and common law, for a sum in excess of Fifteen Thousand Dollars ($15,000.00), to be proven at the time of trial, together with prejudgment interest at the rate allowed by law.

70.    The actions of the Defendants have forced Plaintiff to retain counsel to represent her in the prosecution of this action, and she is therefore entitled to an award of a reasonable amount as attorney's fees and costs of suit.

## SECOND CLAIM FOR RELIEF

### (Battery)

**Against Clark County School District and Roberta McIntyre**

71.    Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporate the same herein by reference.

72.    By unnecessarily, and without any legitimate educational purpose, throwing L.L. off the table, grabbing L.L. by the hair, and throwing the weighted backpack into L.L., CCSD and its employee, McIntyre, made multiple intentional,

- 14 -

unlawful, and harmful contacts with L.L, constituting multiple instances of battery.

73. CCSD is liable for McIntyre's conduct as her conduct: (1) was not an independent venture; (2) was committed in the course of the very task assigned to her (discipline and maintaining order in an educational environment); and (3) was reasonably foreseeable under the facts and circumstances of the case considering the nature and scope of her employment.

74. CCSD's and McIntyre's battery is an actual and proximate or legal cause of L.L.'s injuries. L.L. thereby experienced great pain and anxiety to her body and mind, sustaining injuries and general damages in excess of Fifteen Thousand Dollars ($15,000.00).

75. As a further actual and proximate or legal result of CCSD's and McIntyre's battery, L.L. underwent medical treatment and incurred past medical and/or incidental expenses. L.L. may also require medical treatment in the future due to CCSD's and McIntyre's battery and may incur future medical and/or incidental expenses. The exact amount of such past and future damages is unknown at this present time, but L.L. alleges that she has suffered and/or will suffer special damages in excess of Fifteen Thousand Dollars ($15,000.00).

76. The acts, conduct, and omissions of CCSD and its employee as alleged throughout this Complaint were fraudulent, willful, malicious, and oppressive, and were done with a conscious disregard for the rights and safety of L.L. and other students.

- 15 -

77. The Defendants' conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary, decent people, and was carried on by the Defendants with willful and conscious disregard for the safety of L.L. and other students in the State of Nevada, entitling L.L. to exemplary and punitive damages.

78. The outrageous and unconscionable conduct of the Defendants warrants an award of exemplary and punitive damages in an amount appropriate to punish the Defendants and make an example of them, and to deter similar conduct in the future.

79. The acts of the Defendants complained of herein were willful, malicious, fraudulent, oppressive, and done in conscious disregard of L.L.'s rights, and L.L. is entitled to exemplary and punitive damages pursuant to NRS Chapter 42 and common law, for a sum in excess of Fifteen Thousand Dollars ($15,000.00), to be proven at the time of trial, together with prejudgment interest at the rate allowed by law.

80. The actions of the Defendants have forced Plaintiff to retain counsel to represent her in the prosecution of this action, and she is therefore entitled to an award of a reasonable amount as attorney's fees and costs of suit.

### THIRD CLAIM FOR RELIEF

### (Intentional Infliction of Emotional Distress)

### Against Clark County School District and Roberta McIntyre

81. Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporate the same herein by reference.

82. CCSD's employee, McIntyre, engaged in intentional, extreme, and outrageous conduct when she physically assaulted and taunted L.L., a six-year-old student with severe Autism Spectrum Disorder. CCSD's employee, McIntyre, intended to cause, or acted with a reckless disregard for causing, emotional distress in Plaintiff intimidating, taunting, and physically assaulting L.L.

83. As a direct and proximate result of CCSD' employee, McIntyre's extreme and outrageous conduct, Plaintiff suffered severe and extreme emotional distress.

84. CCSD is liable for McIntyre's conduct as her conduct: (1) was not an independent venture; (2) was committed in the course of the very task assigned to her (discipline and maintaining order in an educational environment); and (3) was reasonably foreseeable under the facts and circumstances of the case considering the nature and scope of her employment.

85. CCSD's and McIntyre's intentional infliction of emotional distress is an actual and proximate or legal cause of L.L.'s injuries. L.L. thereby experienced great pain and anxiety to her body and mind, sustaining injuries and general damages in excess of Fifteen Thousand Dollars ($15,000.00).

86. As a further actual and proximate or legal result of CCSD's and McIntyre's intentional infliction of emotional distress, L.L. underwent medical treatment and incurred past medical and/or incidental expenses. L.L. may also require medical treatment in the future due to CCSD's and McIntyre's intentional infliction of emotional distress and may incur future medical and/or incidental expenses. The exact amount of such past and future damages is unknown at this

- 17 -

present time, but L.L. alleges that she has suffered and/or will suffer special damages in excess of Fifteen Thousand Dollars ($15,000.00).

87. The acts, conduct, and omissions of CCSD and its employee as alleged throughout this Complaint were fraudulent, willful, malicious, and oppressive, and were done with a conscious disregard for the rights and safety of L.L. and other students.

88. The Defendants' conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary, decent people, and was carried on by the Defendants with willful and conscious disregard for the safety of L.L. and other students in the State of Nevada, entitling L.L. to exemplary and punitive damages.

89. The outrageous and unconscionable conduct of the Defendants warrants an award of exemplary and punitive damages in an amount appropriate to punish the Defendants and make an example of them, and to deter similar conduct in the future.

90. The acts of the Defendants complained of herein were willful, malicious, fraudulent, oppressive, and done in conscious disregard of L.L.'s rights, and L.L. is entitled to exemplary and punitive damages pursuant to NRS Chapter 42 and common law, for a sum in excess of Fifteen Thousand Dollars ($15,000.00), to be proven at the time of trial, together with prejudgment interest at the rate allowed by law.

91.     The actions of the Defendants have forced Plaintiff to retain counsel to represent her in the prosecution of this action, and she is therefore entitled to an award of a reasonable amount as attorney's fees and costs of suit.

## FOURTH CLAIM FOR RELIEF

### (Negligence)

### Against All Defendants

92.     Plaintiff repeats and realleges the allegations as contained in the preceding paragraphs herein and incorporates the same herein by reference.

93.     Chapter 391 of the Nevada Administrative Code, Chapters 385, 388, 391, 392, and 432B of the Nevada Revised Statutes, and the common law of the State of Nevada, impose a duty of reasonable professional judgment and reasonable care upon CCSD and its employees in carrying out their responsibilities.

94.     CCSD, and its employees, owed a duty of care to all students, including Plaintiff, to use reasonable professional judgment and reasonable care in not exposing its students to unreasonable risks, not assigning dangerous teachers, not harming students, and not allowing dangerous and harmful conditions to continue.

95.     CCSD negligently and carelessly breached such duty by reason of the aforesaid events, when it created hazards, failed to keep Plaintiff safe from reasonably foreseeable hazards, failed to guard against hazards, and/or failed to warn others of the hazards, continuing to place a known abuser in a position of authority over L.L., by not having adequate policies in place to protect L.L. from

McIntyre's violence, and by allowing its employees to use corporal punishment on L.L.

96.     McIntyre negligently and carelessly breached such duty by reason of the aforesaid events, by repeatedly and without any justification assaulting and accosting L.L, by beating L.L. and using corporal punishment on her, and by forcing L.L. to wear a weighted backpack while seated, causing her to fall to the ground. CCSD is vicariously liable for McIntyre's actions and for any and all damages flowing therefrom.

97.     Cleveland negligently and carelessly breached such duty by reason of the aforesaid events, by failing to report past incidents of abuse by McIntyre, failing to report or intervene when L.L. was physically abused, and creating a hostile and dangerous environment for L.L. and the other children in her class. CCSD is vicariously liable for Cleveland's actions and for any and all damages flowing therefrom.

98.     CCSD, and its employees, were aware that McIntyre had previously beaten, hit, or otherwise abused students prior to assigning McIntyre to L.L.'s special needs class. It was reasonably foreseeable that another student, such as Plaintiff, may be physically assaulted by McIntyre.

99.     CCSD's creation of a hazard, failure to keep Plaintiff safe from reasonably foreseeable hazards, failure to warn and/or otherwise guard against hazards, and/or failure to take reasonable precautions to prevent foreseeable hazards or dangerous conditions actually and proximately or legally caused L.L. to sustain injuries.

- 20 -

100. McIntyre's repeated assaulting, accosting, and beating of L.L. actually and proximately or legally caused L.L. to sustain injuries.

101. Cleveland's failure to report or intervene when witnessing McIntyre's abusive conduct actually and proximately or legally caused L.L. to sustain injuries.

102. NRS 392.4633 defines corporal punishment as the "intentional infliction of physical pain or the physical restraint of a pupil for disciplinary purposes."

103. NRS 392.4633(1) prohibits the use of corporal punishment upon a pupil in any public school.

104. NRS 392.4633(1) is intended to protect students with disabilities from the type of injury, abuse, and intimidation that was suffered by L.L.

105. NRS 432B.220 requires certain persons described in the statute, including public school employees, to report any instances of child abuse or neglect that they know or have reasonable cause to believe has occurred.

106. CCSD's and its employees' violations of these statutory protections, codes, and/or ordinances, including by inflicting corporal punishment upon L.L. and failing to report instances of McIntyre's abuse of another child(ren) and abuse of L.L. demonstrates a breach of the duty of care and constitutes negligence *per se*.

107. CCSD is liable for McIntyre's conduct as her conduct: (1) was not an independent venture; (2) was committed in the course of the very task assigned to her (discipline and maintaining order in an educational environment); and (3)

- 21 -

was reasonably foreseeable under the facts and circumstances of the case considering the nature and scope of her employment.

108.   CCSD is liable for Cleveland's conduct as her conduct: (1) was not an independent venture; (2) was committed in the course of the very task assigned to her (discipline and maintaining order in an educational environment); and (3) was reasonably foreseeable under the facts and circumstances of the case considering the nature and scope of her employment.

109.   The Defendants' negligence is an actual and proximate or legal cause of L.L.'s injuries. L.L. thereby experienced great pain and anxiety to her body and mind, sustaining injuries and general damages in excess of Fifteen Thousand Dollars ($15,000.00).

110.   As a further actual and proximate or legal result of Defendants' negligence, L.L. underwent medical treatment and incurred past medical and/or incidental expenses. L.L. may also require medical treatment in the future due to Defendants' negligence and may incur future medical and/or incidental expenses. The exact amount of such past and future damages is unknown at this present time, but L.L. alleges that she has suffered and/or will suffer special damages in excess of Fifteen Thousand Dollars ($15,000.00).

111.   The acts, conduct, and omissions of CCSD and its employee as alleged throughout this Complaint were fraudulent, willful, malicious, and oppressive, and were done with a conscious disregard for the rights and safety of L.L. and other students.

112. The Defendants' conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary, decent people, and was carried on by the Defendants with willful and conscious disregard for the safety of L.L. and other students in the State of Nevada, entitling L.L. to exemplary and punitive damages.

113. The outrageous and unconscionable conduct of the Defendants warrants an award of exemplary and punitive damages in an amount appropriate to punish the Defendants and make an example of it, and to deter similar conduct in the future.

114. The acts of the Defendants complained of herein were willful, malicious, fraudulent, oppressive, and done in conscious disregard of L.L.'s rights, and L.L. is entitled to exemplary and punitive damages pursuant to NRS Chapter 42 and common law, for a sum in excess of Fifteen Thousand Dollars ($15,000.00), to be proven at the time of trial, together with prejudgment interest at the rate allowed by law.

115. The actions of the Defendants have forced Plaintiff to retain counsel to represent her in the prosecution of this action, and she is therefore entitled to an award of a reasonable amount as attorney's fees and costs of suit.

**FIFTH CLAIM FOR RELIEF**

**(Negligent Hiring, Training, and Supervision)**

**Against CCSD**

116. Plaintiff repeats and realleges the allegations as contained in the preceding paragraphs herein and incorporates the same herein by reference.

117.    Upon information and belief, CCSD hired, trained, supervised, and retained individuals who were responsible for teaching and supervising students, including substitute teachers and teacher's aides such as McIntyre and Cleveland.

118.    CCSD had a duty to hire and staff an adequate number of employees, to hire competent employees, to properly train, properly supervise, and/or properly retain competent employees, agents, independent contractors, and/or representatives.

119.    Chapter 391 of the Nevada Administrative Code, Chapters 385, 388, 391, 392, and 432B of the Nevada Revised Statutes, and the common law of the State of Nevada, impose a duty of reasonable professional judgment and reasonable care upon CCSD and its employees in carrying out their responsibilities pursuant to Nevada State Law.

120.    Upon information and belief, CCSD breached its duty by not hiring an adequate number of employees, by improperly hiring, improperly training, improperly supervising, and improperly retaining incompetent employees, agents, independent contractors, and/or representatives, such as McIntyre and Cleveland.

121.    Specifically, CCSD breached its duty of care by having inadequate hiring policies and procedures that allowed CCSD to hire McIntyre, who upon information and belief was unfit and/or incompetent to be a substitute on special assignment and to be working with children.

122.    Upon information and belief, CCSD breached its duty of care by failing to provide adequate training to McIntrye about:

    a. Proper behavioral management techniques for autistic students;

- 24 -

b.  De-escalation strategies;

c.  Nevada's prohibition on corporal punishment;

d.  Proper use and documentation of aversive interventions;

e.  Recognition of child abuse and mandatory reporting obligations;

f.  Intervening with co-workers when abuse is witnessed; and

g.  Safeguarding or removing students from abuse.

123.  McIntyre failed to implement proper behavioral management techniques and de-escalation strategies, implemented corporal punishment, failed to document aversive interventions, did not report instances of abuse, and failed to remove L.L. from abuse, in that she kicked a student, flipped a table into the air while L.L. was standing on it, grabbed L.L. by the hair, forced L.L. to wear a weighted backpack, and threw a weighted backpack at L.L., demonstrating that CCSD failed to adequately train McIntyre to safely complete the tasks that CCSD assigned to her.

124.  Upon information and belief, CCSD breached its duty of care when CCSD, by and through its agents, failed to conduct regular and periodic follow ups with McIntyre as a substitute teacher in a special education classroom to ensure the smooth operations and proper conduct of the temporary teacher, failed to take action after McIntyre kicked a student, and failed to appoint another teacher to monitor McIntyre when she was assigned to another special needs class the following day, which allowed her to physically abuse and verbally accost L.L. at Lake Elementary School.

- 25 -

125. Additionally, CCSD breached its duty of care by having inadequate hiring policies and procedures that allowed CCSD to hire Cleveland, who upon information and belief was unfit and/or incompetent to be a teacher's aid; by having inadequate training policies and procedures and failing to properly train Cleveland; by failing to implement proper supervision over Cleveland which allowed her to repeatedly witness McIntyre's abuse of L.L. without doing anything to prevent future harm, as she was required to.

126. Upon information and belief, CCSD breached its duty of care by failing to provide adequate training to Cleveland about:

    a. Proper behavioral management techniques for autistic students;

    b. De-escalation strategies;

    c. Nevada's prohibition on corporal punishment;

    d. Proper use and documentation of aversive interventions;

    e. Recognition of child abuse and mandatory reporting obligations;

    f. Intervening with co-workers when abuse is witnessed; and

    g. Safeguarding or removing students from abuse.

127. Cleveland's conduct, including failing to report multiple instances of McIntyre's abuse and leaving the room while McIntyre was alone with the kids, demonstrates that CCSD failed to adequately train Cleveland to safely complete the tasks that CCSD assigned to her.

128. Upon information and belief, CCSD breached its duty of care by failing to properly supervise Cleveland when CCSD, by and through its agents, failed to conduct regular and periodic follow ups with Cleveland while there was

- 26 -

a substitute teacher in a special education classroom to ensure the smooth operations and proper conduct of the temporary teacher.

129. CCSD's negligent hiring, training, and supervision is an actual and proximate or legal cause of L.L.'s injuries. L.L. thereby experienced great pain and anxiety to her body and mind, sustaining injuries and general damages in excess of Fifteen Thousand Dollars ($15,000.00).

130. As a further actual and proximate or legal result of CCSD's negligent hiring, training, and supervision, L.L. underwent medical treatment and incurred past medical and/or incidental expenses. L.L. may also require medical treatment in the future due to CCSD's negligent hiring, training, and supervision and may incur future medical and/or incidental expenses. The exact amount of such past and future damages is unknown at this present time, but L.L. alleges that she has suffered and/or will suffer special damages in excess of Fifteen Thousand Dollars ($15,000.00).

131. The acts, conduct, and omissions of CCSD and its employees as alleged throughout this Complaint were fraudulent, willful, malicious, and oppressive, and were done with a conscious disregard for the rights and safety of L.L. and other students.

132. CCSD's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary, decent people, and was carried on by CCSD with willful and conscious disregard for the safety of L.L. and other students in the State of Nevada, entitling L.L. to exemplary and punitive damages.

- 27 -

133. The outrageous and unconscionable conduct of CCSD warrants an award of exemplary and punitive damages in an amount appropriate to punish CCSD and make an example of it, and to deter similar conduct in the future.

134. The acts of CCSD complained of herein were willful, malicious, fraudulent, oppressive, and done in conscious disregard of L.L.'s rights, and L.L. is entitled to exemplary and punitive damages pursuant to NRS Chapter 42 and common law, for a sum in excess of Fifteen Thousand Dollars ($15,000.00), to be proven at the time of trial, together with prejudgment interest at the rate allowed by law.

135. CCSD's actions have forced Plaintiff to retain counsel to represent her in the prosecution of this action, and she is therefore entitled to an award of a reasonable amount as attorney's fees and costs of suit.

## SIXTH CLAIM FOR RELIEF

**(Violation of 14th Amendment to the United States Constitution -**

**Substantive Due Process)**

**Defendants Roberta McIntyre & Monique Cleveland**

136. Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporate the same herein by reference.

137. By her actions as described herein, Defendant Roberta McIntyre, under color of statute, ordinance, regulation, custom, or usage, subjected L.L. to the deprivation of rights, privileges, or immunities secured by the Constitution of the United States of America, as well as laws of the Federal government.

- 28 -

138.    In particular, as a student in a public school, L.L. has a liberty interest and right to bodily integrity protected by the Due Process Clause within the Fourteenth Amendment to the United States Constitution.

139.    As set forth above, during the relevant time period, Defendant Roberta McIntyre, under color of authority, used arbitrary and excessive corporal punishment, abused, and harassed L.L.

140.    Defendant Roberta McIntyre's arbitrary and excessive use of corporal punishment, abuse and harassment was unnecessary, deliberate, and for the purpose of causing harm to L.L.

141.    Defendant Roberta McIntyre's arbitrary and excessive use of corporal punishment, abuse and harassment was for the purpose of punishing L.L. for actions which were characteristic of L.L.'s disability and occurred because of her disability.

142.    Defendant Roberta McIntyre punished L.L. with arbitrary and excessive use of corporal punishment, abuse and harassment because McIntyre believed L.L.'s disability made her unable or less likely to report the violations.

143.    Defendant Roberta McIntyre's arbitrary and excessive use of corporal punishment, abuse and harassment of L.L. was disproportionate to the needs presented. L.L. was not a physical danger to any Defendant or other classmate, has severe Autism Spectrum Disorder, is a juvenile, and was behaving in ways consistent with her disability. Defendant McIntyre had the opportunity to gain control of L.L. and maintain order within the classroom through, including

but not limited to, audible requests, intervention, and requesting outside support, without imposing arbitrary and excessive corporal punishment.

144. Considering the circumstances and the alternative means available, Defendant McIntyre intentionally acted to punish L.L. because she was inspired by malice or sadism, arising out of L.L.'s behavior and disability, and not because she was merely careless. Defendant McIntyre's actions are so brutal and inhumane that it shocks the conscience.

145. Defendant Monique Cleveland's failure to intervene or report the arbitrary and excessive corporal punishment imposed on L.L. by Defendant McIntyre is so shocking to the conscience that it violates the standards of contemporary morality.

146. Defendant Monique Cleveland's actions were improper, unlawful, and because she believed L.L.'s disability made her unable or less likely to report the violations and Defendants' misconduct.

147. No person in Defendant Monique Cleveland's position would witness such conduct and turn a blind eye unless there was improper or malicious motive to inflict punishment on L.L. Accordingly, Defendant Monique Cleveland's behavior is so egregious that it shocks the conscience.

148. Defendant Roberta McIntyre's actions, as described above, including but not limited to, the repeated use of arbitrary and excessive corporal punishment, and Defendant Monique Cleveland's repeated failure to report or document the uses of corporal punishment, violated Constitutional protections and laws and CCSD's own written policies.

149. Defendants' actions are an actual and proximate or legal cause of L.L.'s injuries. L.L. thereby experienced great pain and anxiety to her body and mind, sustaining injuries and general damages in excess of Fifteen Thousand Dollars ($15,000.00).

150. As a further actual and proximate or legal result of the Defendants' acts, L.L. underwent medical treatment and incurred past medical and/or incidental expenses. L.L. may also require medical treatment in the future due to the Defendants' acts and may incur future medical and/or incidental expenses. The exact amount of such past and future damages is unknown at this present time, but L.L. alleges that she has suffered and/or will suffer special damages in excess of Fifteen Thousand Dollars ($15,000.00).

151. The acts, conduct, and omissions of CCSD, and its employee, as alleged throughout this Complaint were fraudulent, willful, malicious, and oppressive, and were done with a conscious disregard for the rights and safety of L.L. and other students.

152. The Defendants' conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary, decent people, and was carried on by the Defendants with willful and conscious disregard for the safety of L.L. and other students in the State of Nevada, entitling L.L. to exemplary and punitive damages.

153. The outrageous and unconscionable conduct of the Defendants warrants an award of exemplary and punitive damages in an amount appropriate

to punish the Defendants and make an example of them, and to deter similar conduct in the future.

154.    The acts of the Defendants complained of herein were willful, malicious, fraudulent, oppressive, arbitrary, excessive, deliberately indifferent, and done in conscious disregard of L.L.'s rights, and L.L. is entitled to exemplary and punitive damages pursuant to NRS Chapter 42 and common law, for a sum in excess of Fifteen Thousand Dollars ($15,000.00), to be proven at the time of trial, together with prejudgment interest at the rate allowed by law.

155.    Defendants, and each of them, acting under the color of law, have deprived L.L. of rights, privileges, or immunities secured to her by the Constitution of the State of Nevada, the Constitution of the United States of America, and 42 U.S.C. § 1983.

156.    The actions of the Defendants have forced Plaintiff to retain counsel to represent her in the prosecution of this action, and she is therefore entitled to an award of a reasonable amount as attorney's fees and costs of suit.

## SEVENTH CLAIM FOR RELIEF

### (Violation of Article 1 Section 8 of the Nevada Constitution - Substantive Due Process)

### All Defendants

157.    Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporate the same herein by reference.

158.    By their actions as described herein, Defendant Roberta McIntyre and Defendant Monique Cleveland, under color of statute, ordinance, regulation,

- 32 -

custom, or usage, subjected L.L. to the deprivation of rights, privileges, or immunities secured by the Constitution of the State of Nevada as well as laws of the State of Nevada.

159. Defendant CCSD waives immunity pursuant to NRS 41.031.

160. Through its customs, polices, and procedures, as described herein, Defendant CCSD, under color of statute, ordinance, regulation, custom, or usage, subjected L.L. to the deprivation of rights, privileges, or immunities secured by the Constitution of the State of Nevada as well as laws of the State.

161. In particular, as a student in a public school, L.L. has a liberty interest and right to bodily integrity protected by the Due Process Clause within Article 1 Section 8 of the Nevada Constitution.

162. As set forth above, during the relevant time period, Defendant Roberta McIntyre, under color of authority, used arbitrary and excessive corporal punishment, abused, and harassed L.L.

163. Defendant Roberta McIntyre's arbitrary and excessive use of corporal punishment, abuse and harassment was unnecessary, deliberate, and for the purpose of causing harm to L.L.

164. Defendant Roberta McIntyre punished L.L. with arbitrary and excessive use of corporal punishment, abuse and harassment to punish her for actions which were characteristic of L.L.'s disability and occurred because of her disability.

165. Defendant Roberta McIntyre punished L.L. with arbitrary and excessive use of corporal punishment, abuse and harassment because McIntyre believed L.L.'s disability made her unable or less likely to report the violations.

166. Defendant Roberta McIntyre's arbitrary and excessive use of corporal punishment, abuse and harassment of L.L. was disproportionate to the needs presented. L.L. was not a physical danger to any Defendant or other classmate, has severe Autism Spectrum Disorder, is a juvenile, and was behaving in ways consistent with her disability. Defendant McIntyre had the opportunity to gain control of L.L. and maintain order within the classroom through, including but not limited to, audible requests, intervention, and requesting outside support, without imposing arbitrary and excessive corporal punishment.

167. Considering the circumstances and the alternative means available, Defendant McIntyre intentionally acted to punish L.L. because she was inspired by malice or sadism, arising out of L.L.'s behavior and disability, and not because she was merely careless. Defendant McIntyre's actions are so brutal and inhumane that it shocks the conscience.

168. Defendant Monique Cleveland's failure to intervene or report the arbitrary and excessive corporal punishment imposed on L.L. by Defendant McIntyre is so shocking to the conscience that it violates the standards of contemporary morality.

169. Defendant Monique Cleveland's actions were improper, unlawful, and because she believed L.L.'s disability made her unable or less likely to report the violations and Defendants' misconduct.

170. No person in Defendant Monique Cleveland's position would witness such conduct and turn a blind eye unless there was improper or malicious motive to inflict punishment on L.L. Accordingly, Defendant Monique Cleveland's behavior is so egregious that it shocks the conscience.

171. Defendant Roberta McIntyre's actions, as described above, including but not limited to, the repeated use of arbitrary and excessive corporal punishment, and Defendant Monique Cleveland's repeated failure to report or document the uses of corporal punishment, violated State law and CCSD's own written policies.

172. Upon information and belief, Defendant CCSD maintained customs, policies, and practices that were the moving force behind the violation of L.L.'s constitutional rights, including but not limited to:

a. A custom, policy, or practice of inadequate training of teachers and staff regarding the constitutional limits on the use of force against students;

b. A custom, policy, or practice of inadequate supervision of teachers and staff in their interactions with students;

c. A custom, policy, or practice of failing to discipline teachers and staff who use excessive force against students;

d. A custom, policy, or practice of failing to investigate complaints of excessive force against students; and

e. A custom, policy, or practice of tolerating, condoning, or ratifying the use of excessive force by teachers and staff against students.

- 35 -

173.   Upon information and belief, Defendant CCSD's customs, policies, and practices as described herein are evidenced by repeated offenses of teachers and administrators in the same or similar position as Defendant Roberta McIntyre; Defendant CCSD's knowledge of prior incidents through complaints, reports, or investigations, and the continued patterns of similar conduct; Defendant Roberta McIntyre's conduct and behavior; Defendant Monique Cleveland's conduct and behavior in failing to report as a mandated reporter; policymakers and/or officials of Defendant CCSD were aware of the need for training or supervision and their subsequent deliberate indifference and/or failure to train, supervise, or otherwise act despite the likelihood of a Constitutional violation arising; and Defendant CCSD's failure to take corrective actions against other employees engaging in the same or substantially similar conduct.

174.   Upon information and belief, Defendant CCSD's conduct was deliberately indifferent to the constitutional rights of L.L. and other students. Defendant CCSD knew of the substantial risk of constitutional violations arising out of arbitrary and excessive corporal punishment upon students similarly situated to L.L. and consciously disregarded such risks. Defendant CCSD knew of the obvious need to train and supervise employees interacting with students with special needs such as L.L. and disregarded such needs with the knowledge that such failure was obviously or likely to result in Constitutional violations. Defendant CCSD knew of the obvious need to change policies or address de facto policies and customs related to teacher and employee reporting duties and

interactions with L.L. and students similarly situated to L.L., and disregarded such obvious needs with the knowledge of the Constitutional risks.

175. Upon information and belief, and alternatively, Defendant CCSD's constitutional violations resulted from a decision or action by a final policymaker for Defendant CCSD.

176. Defendant CCSD knew of the intentional and abusive practices being used by its employees against L.L. and other students similarly situated as L.L., which, upon information and belief, are well-known and documented within the CCSD. Accordingly, these well-known violations, abusive practices, and failures to report constituted a de facto policy that was the moving force behind the constitutional violations imposed upon L.L.

177. Defendant CCSD, despite this knowledge, failed to take affirmative action to provide for the safety and well-being of L.L. and the students in her class.

178. Defendant CCSD knew of and disregarded its duty to properly train its employees engaging with special needs students and Defendant CCSD's deliberate indifference was the moving force behind the constitutional violations imposed upon L.L.

179. Upon information and belief, a final policymaker within Defendant CCSD's organization knew of the violative conduct related to corporal punishment imposed upon students such as L.L. and those similarly situated to L.L., and ratified the unconstitutional action which was the moving force behind the constitutional violations imposed upon L.L.

- 37 -

180. The customs, policies, practices, and deliberate indifference of Defendant CCSD were the moving force behind and directly caused the violation of L.L.'s rights under Article 1 Section 8 of the Nevada Constitution.

181. Defendants' actions are an actual and proximate or legal cause of L.L.'s injuries. L.L. thereby experienced great pain and anxiety to her body and mind, sustaining injuries and general damages in excess of Fifteen Thousand Dollars ($15,000.00).

182. As a further actual and proximate or legal result of the Defendants' acts, L.L. underwent medical treatment and incurred past medical and/or incidental expenses. L.L. may also require medical treatment in the future due to the Defendants' acts and may incur future medical and/or incidental expenses. The exact amount of such past and future damages is unknown at this present time, but L.L. alleges that she has suffered and/or will suffer special damages in excess of Fifteen Thousand Dollars ($15,000.00).

183. The acts, conduct, and omissions of CCSD, and its employee, as alleged throughout this Complaint were fraudulent, willful, malicious, and oppressive, and were done with a conscious disregard for the rights and safety of L.L. and other students.

184. The Defendants' conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary, decent people, and was carried on by the Defendants with willful and conscious disregard for the safety of L.L. and other students in the State of Nevada, entitling L.L. to exemplary and punitive damages.

185.   The outrageous and unconscionable conduct of the Defendants warrants an award of exemplary and punitive damages in an amount appropriate to punish the Defendants and make an example of them, and to deter similar conduct in the future.

186.   The acts of the Defendants complained of herein were willful, malicious, fraudulent, oppressive, arbitrary, excessive, deliberately indifferent, and done in conscious disregard of L.L.'s rights, and L.L. is entitled to exemplary and punitive damages pursuant to NRS Chapter 42 and common law, for a sum in excess of Fifteen Thousand Dollars ($15,000.00), to be proven at the time of trial, together with prejudgment interest at the rate allowed by law.

187.   Defendants, and each of them, acting under the color of law, have deprived L.L. of rights, privileges, or immunities secured to her by the Constitution of the State of Nevada.

188.   The actions of the Defendants have forced Plaintiff to retain counsel to represent her in the prosecution of this action, and she is therefore entitled to an award of a reasonable amount as attorney's fees and costs of suit.

## EIGHTH CLAIM FOR RELIEF

### (Violation of 14th Amendment to the United States Constitution -

### Substantive Due Process)

### Defendant CCSD – *Monell* Liability

189.   Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporate the same herein by reference.

- 39 -

190.    Defendant CCSD is a governmental entity and a "person" subject to liability under 42 U.S.C. § 1983.

191.    Through its customs, polices, and procedures, as described herein, Defendant CCSD, under color of statute, ordinance, regulation, custom, or usage, subjected L.L. to the deprivation of rights, privileges, or immunities secured by the Constitution of the United States of America, as well as laws of the Federal government.

192.    In particular, as a student in a public school, L.L. has a liberty interest and right to bodily integrity protected by the Due Process Clause within the Fourteenth Amendment to the United States Constitution.

193.    Upon information and belief, Defendant CCSD maintained customs, policies, and practices that were the moving force behind the violation of L.L.'s constitutional rights, including but not limited to:

  a. A custom, policy, or practice of inadequate training of teachers and staff regarding the constitutional limits on the use of force against students;

  b. A custom, policy, or practice of inadequate supervision of teachers and staff in their interactions with students;

  c. A custom, policy, or practice of failing to discipline teachers and staff who use excessive force against students;

  d. A custom, policy, or practice of failing to investigate complaints of excessive force against students; and

- 40 -

e. A custom, policy, or practice of tolerating, condoning, or ratifying the use of excessive force by teachers and staff against students.

194. Upon information and belief, Defendant CCSD's customs, policies, and practices as described herein are evidenced by repeated offenses of teachers and administrators in the same or similar position as Defendant Roberta McIntyre; Defendant CCSD's knowledge of prior incidents through complaints, reports, or investigations, and the continued patterns of similar conduct; Defendant Roberta McIntyre's conduct and behavior; Defendant Monique Cleveland's conduct and behavior in failing to report as a mandated reporter; policymakers and/or officials of Defendant CCSD were aware of the need for training or supervision and their subsequent deliberate indifference and/or failure to train, supervise, or otherwise act despite the likelihood of a Constitutional violation arising; and Defendant CCSD's failure to take corrective actions against other employees engaging in the same or substantially similar conduct.

195. Upon information and belief, Defendant CCSD's conduct was deliberately indifferent to the constitutional rights of L.L. and other students. Defendant CCSD knew of the substantial risk of constitutional violations arising out of arbitrary and excessive corporal punishment upon students similarly situated to L.L. and consciously disregarded such risks. Defendant CCSD knew of the obvious need to train and supervise employees interacting with students with special needs such as L.L. and disregarded such needs with the knowledge that such failure was obviously or likely to result in Constitutional violations.

- 41 -

Defendant CCSD knew of the obvious need to change policies or address de facto policies and customs related to teacher and employee reporting duties and interactions with L.L. and students similarly situated to L.L., and disregarded such obvious needs with the knowledge of the Constitutional risks.

196. Upon information and belief, and alternatively, Defendant CCSD's constitutional violations resulted from a decision or action by a final policymaker for Defendant CCSD.

197. Defendant CCSD knew of the intentional and abusive practices being used by its employees against L.L. and other students similarly situated as L.L., which, upon information and belief, are well-known and documented within the CCSD. Accordingly, these well-known violations, abusive practices, and failures to report constituted a de facto policy that was the moving force behind the constitutional violations imposed upon L.L.

198. Defendant CCSD, despite this knowledge, CCSD failed to take affirmative action to provide for the safety and well-being of L.L. and the students in her class.

199. Defendant CCSD knew of and disregarded its duty to properly train its employees engaging with special needs students, and Defendant CCSD's deliberate indifference was the moving force behind the constitutional violations imposed upon L.L.

200. Upon information and belief, a final policymaker within Defendant CCSD's organization knew of the violative conduct related to corporal punishment imposed upon students such as L.L. and those similarly situated to

- 42 -

L.L., and ratified the unconstitutional action which was the moving force behind the constitutional violations imposed upon L.L.

201. The customs, policies, practices, and deliberate indifference of Defendant CCSD were the moving force behind and directly caused the violation of L.L.'s rights under the Fourteenth Amendment to the United States Constitution.

202. Defendant CCSD's knowledge, failures, de facto customs, and/or the final policymaker's ratification reveals a knowledge and risk of excessive corporal punishment being imposed on disabled students that was caused by their policies that are so inhumane it shocks the conscience.

203. As a direct and proximate result of Defendant CCSD's arbitrary and excessive use of force through corporal punishment, L.L. suffered physical injuries, pain and suffering, emotional distress, psychological trauma, and other damages in excess of Fifteen Thousand Dollars ($15,000.00).

204. The outrageous and unconscionable conduct of Defendant CCSD warrants an award of exemplary and punitive damages in an amount appropriate to punish and make an example of them, and to deter similar conduct in the future.

205. The acts of Defendant CCSD complained of herein were willful, malicious, fraudulent, oppressive, deliberately indifferent, and done in conscious disregard of L.L.'s Constitutional rights, and L.L. is entitled to exemplary and punitive damages pursuant to NRS Chapter 42 and common law, for a sum in

excess of Fifteen Thousand ($15,000), to be proven at the time of trial, together with prejudgment interest at the rate allowed by law.

### NINTH CLAIM FOR RELIEF

**(Violation of 14th Amendment to the United States Constitution – Equal Rights)**

**Against Defendants Roberta McIntyre and Monique Cleveland**

206. Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporate the same herein by reference.

207. Defendants Roberta McIntyre's and Monique Cleveland's actions, as set forth herein, violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, in that the heinous actions described and the subsequent failures to perform mandated duties in this Complaint are not inflicted upon other students in the CCSD who do not suffer from disabilities.

208. L.L. is a disabled student in CCSD. L.L. was similarly situated to non-disabled students in the school in terms of the expectations to a safe learning environment free from arbitrary and excessive corporal punishment.

209. Defendant Roberta McIntyre and Defendant Monique Cleveland treated L.L. differently than the non-disabled students.

210. Specifically, Defendant Roberta McIntyre subjected L.L. to arbitrary and excessive corporal punishment, humiliation, different discipline measures, and denial of a safe learning environment.

211. Defendant Monique Cleveland treated L.L. differently through her failure to abide by her duty to report and intervene in arbitrary and excessive corporal punishment.

212. Defendants Roberta McIntyre's and Monique Cleveland's actions are because of L.L.'s disability.

213. Defendant McIntyre imposed the abuse, as described herein, upon L.L. because of L.L.'s disability and the actions arising out of her disability with the intent to discriminate on that basis. These same abuses are not imposed upon students without disabilities.

214. Further, Defendant McIntyre imposed the abuse, as described herein, because she believed L.L.'s disability rendered her unable or less likely to report the abuses. These same abuses are not imposed upon students without disabilities because they are not perceived to be less likely or unable to report the abuses.

215. Defendant Cleveland failed to uphold her duties and responsibilities, as described herein, because of L.L.'s disability and, upon information and belief, the perception that L.L. was less likely to report it herself. These same acts and failures to act do not occur with students without disabilities because they are not perceived to be less likely or unable to report the abuses.

216. Defendants' intentional and negligent acts are an actual and proximate or legal cause of L.L.'s injuries. L.L. thereby experienced great pain and anxiety to her body and mind, sustaining injuries and general damages in excess of Fifteen Thousand Dollars ($15,000.00).

217. As a further actual and proximate or legal result of Defendants' intentional and negligent acts, L.L. underwent medical treatment and incurred past medical and/or incidental expenses. L.L. may also require medical treatment in the future due to Defendants' intentional and negligent acts and may incur future medical and/or incidental expenses. The exact amount of such past and future damages is unknown at this present time, but L.L. alleges that she has suffered and/or will suffer special damages in excess of Fifteen Thousand Dollars ($15,000.00).

218. The acts, conduct, and omissions of Defendants McIntyre and Cleveland as alleged throughout this Complaint were fraudulent, willful, malicious, and oppressive, and were done with a conscious disregard for the rights and safety of L.L. and other students.

219. Defendants' conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary, decent people, and was carried on by Defendants with willful and conscious disregard for the safety of L.L. and other students in the State of Nevada, entitling L.L. to exemplary and punitive damages.

220. The outrageous and unconscionable conduct of the Defendants warrants an award of exemplary and punitive damages in an amount appropriate to punish the Defendants and make an example of them, and to deter similar conduct in the future.

221. The Defendants' acts complained of herein, were willful, malicious, fraudulent, oppressive, and done in conscious disregard of L.L.'s rights, and L.L.

is entitled to exemplary and punitive damages pursuant to NRS Chapter 42 and common law, for a sum in excess of Fifteen Thousand Dollars ($15,000.00), to be proven at the time of trial, together with prejudgment interest at the rate allowed by law.

222. Defendants, and each of them, acting under the color of law, have deprived L.L. of rights, privileges, or immunities secured to her by the Constitution of the United States of America and 42 U.S.C. § 1983.

223. The Defendants' actions have forced Plaintiff to retain counsel to represent her in the prosecution of this action, and she is therefore entitled to an award of a reasonable amount as attorney's fees and costs of suit.

## TENTH CLAIM FOR RELIEF

### (Violation of Article 1 Section 24 of the Nevada Constitution – Equal Rights)

### Against All Defendants

224. Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporate the same herein by reference.

225. Defendants Roberta McIntyre's and Monique Cleveland's actions, as set forth herein, violate Article 1 Section 24 of Nevada's State Constitution, in that the heinous actions described and the subsequent failures to perform mandated duties in this Complaint are not inflicted upon other students in the CCSD who do not suffer from disabilities.

226. L.L. is a disabled student in CCSD.

227.   Pursuant to Article 1 Section 24 of the Nevada Constitution, disabled persons are part of the specially protected and enumerated classes.

228.   L.L. was similarly situated to non-disabled students in the school in terms of the expectations to a safe learning environment free from arbitrary and excessive corporal punishment.

229.   Defendant Roberta McIntyre and Defendant Monique Cleveland treated L.L. differently than the non-disabled students.

230.   Specifically, Defendant Roberta McIntyre subjected L.L. to arbitrary and excessive corporal punishment, humiliation, different discipline measures, and denial of a safe learning environment.

231.   Defendant Monique Cleveland treated L.L. differently through her failure to abide by her duty to report and intervene in arbitrary and excessive corporal punishment.

232.   Defendants Roberta McIntyre's and Monique Cleveland's actions are because of L.L.'s disability.

233.   Defendant McIntyre imposed the abuse, as described herein, upon L.L. because of L.L.'s disability and the actions arising out of her disability with the intent to discriminate on that basis. These same abuses are not imposed upon students without disabilities.

234.   Further, Defendant McIntyre imposed the abuse, as described herein, because she believed L.L.'s disability rendered her unable or less likely to report the abuses. These same abuses are not imposed upon students without

- 48 -

disabilities because they are not perceived to be less likely or unable to report the abuses.

235. Defendant Cleveland failed to uphold her duties and responsibilities, as described herein, because of L.L.'s disability and, upon information and belief, the perception that L.L. was less likely to report it herself. These same acts and failures to act do not occur with students without disabilities because they are not perceived to be less likely or unable to report the abuses.

236. The actions of Defendant CCSD, as set forth herein, violate Article 1 Section 24 of the Nevada Constitution in that the heinous actions described in this Complaint are not inflicted upon other students in the CCSD who do not suffer from disabilities.

237. At all relevant times, Defendant CCSD was a local government entity responsible for the operation of L.L.'s school and the provision of public education to students, including L.L.

238. At all relevant times, Defendants Roberta McIntyre and Monique Cleveland were employed by Defendant CCSD and acted under color of state law while performing duties as a teacher, including the acts and omissions described herein.

239. Defendant CCSD violated L.L.'s constitutional rights to equal protection because of a policy, custom, practice, and/or decision by an official with final policymaking authority.

240. Defendant CCSD maintained, permitted, and/or ratified a policy, custom, or practice that resulted in disparate treatment against students with disabilities, including L.L., in violation of their Constitutional rights.

241. As set forth above, during the relevant time period, CCSD and its employees failed to protect L.L. and students similarly situated to L.L. by placing known abusers in a position of authority over L.L. and other disabled students, used corporal punishment on L.L., and failed to monitor, report, or stop the abuse, allowing it to continue.

242. The forms of abuse and negligence that were committed by Defendants Roberta McIntyre and Monique Cleveland against L.L., as described herein, were not inflicted on children without disabilities who were also attending a public school in Clark County, Nevada, constituting a violation of equal protection.

243. Defendant CCSD knew of the intentional and abusive practices being used by its employees against L.L. and other students similarly situated as L.L., which, upon information and belief, are well-known and documented within the CCSD. Accordingly, these well-known violations, abusive practices, and failures to report constituted a de facto policy that was the moving force behind the intentional discriminatory acts.

244. Defendant CCSD, despite this knowledge, failed to take affirmative action to provide for the safety and well-being of L.L. and the students in her class because of her status as a disabled student and actual or perceived ability to properly report and protect her rights under the law.

245. Defendant CCSD knew of and disregarded its duty to properly train its employees engaging with special needs students. Defendant CCSD knew the risk of failing or improperly training and/or supervising its employees engaging with special needs students was obvious or likely to lead to a Constitutional violation such as the one imposed on L.L., and still failed to take action. Defendant CCSD's knowing failure to address the training and supervision of these employees constitutes deliberate indifference, and it was this deliberate indifference that was the moving force behind the constitutional violations imposed upon L.L.

246. Upon information and belief, a final policymaker within Defendant CCSD's organization knew of the violative conduct related to corporal punishment imposed upon students such as L.L. and those similarly situated to L.L., and ratified the unconstitutional action which was the moving force behind the constitutional violations imposed upon L.L.

247. Defendant CCSD's policies, customs, widespread practices, ratification, and/or deliberate indifference created a disparate treatment not existent against non-disabled students and arises because of L.L.'s disabilities. Defendant CCSD's conduct was, therefore, the moving force behind the constitutional violation.

248. Defendants' intentional and negligent acts are an actual and proximate or legal cause of L.L.'s injuries. L.L. thereby experienced great pain and anxiety to her body and mind, sustaining injuries and general damages in excess of Fifteen Thousand Dollars ($15,000.00).

249. As a further actual and proximate or legal result of Defendants' intentional and negligent acts, L.L. underwent medical treatment and incurred past medical and/or incidental expenses. L.L. may also require medical treatment in the future due to Defendants' intentional and negligent acts and may incur future medical and/or incidental expenses. The exact amount of such past and future damages is unknown at this present time, but L.L. alleges that she has suffered and/or will suffer special damages in excess of Fifteen Thousand Dollars ($15,000.00).

250. The acts, conduct, and omissions of Defendants alleged throughout this Complaint were fraudulent, willful, malicious, and oppressive, and were done with a conscious disregard for the rights and safety of L.L. and other students.

251. Defendants' conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary, decent people, and was carried on by Defendants with willful and conscious disregard for the safety of L.L. and other disabled students in the State of Nevada, entitling L.L. to exemplary and punitive damages.

252. The outrageous and unconscionable conduct of the Defendants warrants an award of exemplary and punitive damages in an amount appropriate to punish the Defendants and make an example of them, and to deter similar conduct in the future.

253. The Defendants' acts complained of herein, were willful, malicious, fraudulent, oppressive, and done in conscious disregard of L.L.'s rights, and L.L. is entitled to exemplary and punitive damages pursuant to NRS Chapter 42 and

common law, for a sum in excess of Fifteen Thousand Dollars ($15,000.00), to be proven at the time of trial, together with prejudgment interest at the rate allowed by law.

254. Defendants, and each of them, acting under the color of law, have deprived L.L. of rights, privileges, or immunities secured to her by Article 1 Section 24 of the Nevada Constitution.

255. The Defendants' actions have forced Plaintiff to retain counsel to represent her in the prosecution of this action, and she is therefore entitled to an award of a reasonable amount as attorney's fees and costs of suit.

## ELEVENTH CLAIM FOR RELIEF

### (Violation of Constitutional Right to Equal Protection)

### Defendant CCSD – *Monell* Liability

256. Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporate the same herein by reference.

257. Defendant CCSD is a governmental entity and a "person" subject to liability under 42 U.S.C. § 1983.

258. The actions of Defendant CCSD, as set forth herein, violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution in that the heinous actions described in this Complaint are not inflicted upon other students in the CCSD who do not suffer from disabilities.

259. At all relevant times, Defendant CCSD was a local government entity responsible for the operation of L.L.'s school and the provision of public education to students, including L.L.

- 53 -

260.    At all relevant times, Defendants Roberta McIntyre and Monique Cleveland were employed by Defendant CCSD and acted under color of state law while performing duties as a teacher, including the acts and omissions described herein.

261.    Defendant CCSD violated L.L.'s constitutional rights to equal protection because of a policy, custom, practice, and/or decision by an official with final policymaking authority.

262.    Defendant CCSD maintained, permitted, and/or ratified a policy, custom, or practice that resulted in disparate treatment against students with disabilities, including L.L., in violation of their Constitutional rights.

263.    As set forth above, during the relevant time period, CCSD and its employees failed to protect L.L. and students similarly situated to L.L. by placing known abusers in a position of authority over L.L. and other disabled students, used corporal punishment on L.L., and failed to monitor, report, or stop the abuse, allowing it to continue.

264.    The forms of abuse and negligence that were committed by Defendants Roberta McIntyre and Monique Cleveland against L.L., as described herein, were not inflicted on children without disabilities who were also attending a public school in Clark County, Nevada, constituting a violation of equal protection.

265.    Defendant CCSD knew of the intentional and abusive practices being used by its employees against L.L. and other students similarly situated as L.L., which, upon information and belief, are well-known and documented within

the CCSD. Accordingly, these well-known violations, abusive practices, and failures to report constituted a de facto policy that was the moving force behind the intentional discriminatory acts.

266. Defendant CCSD, despite this knowledge, failed to take affirmative action to provide for the safety and well-being of L.L. and the students in her class because of her status as a disabled student and actual or perceived ability to properly report and protect her rights under the law.

267. Defendant CCSD knew of and disregarded its duty to properly train its employees engaging with special needs students. Defendant CCSD knew the risk of failing or improperly training and/or supervising its employees engaging with special needs students was obvious or likely to lead to a Constitutional violation such as the one imposed on L.L., and still failed to take action. Defendant CCSD's knowing failure to address the training and supervision of these employees constitutes deliberate indifference and it was this deliberate indifference that was the moving force behind the constitutional violations imposed upon L.L.

268. Upon information and belief, a final policymaker within Defendant CCSD's organization knew of the violative conduct related to corporal punishment imposed upon students such as L.L. and those similarly situated to L.L., and ratified the unconstitutional action which was the moving force behind the constitutional violations imposed upon L.L.

269. Defendant CCSD's policies, customs, widespread practices, ratification, and/or deliberate indifference created a disparate treatment not

existent against non-disabled students and arises because of L.L.'s disabilities. Defendant CCSD's conduct was, therefore, the moving force behind the constitutional violation.

270. Defendant CCSD's acts are an actual and proximate or legal cause of L.L.'s injuries. L.L. thereby experienced great pain and anxiety to her body and mind, sustaining injuries and general damages in excess of Fifteen Thousand Dollars ($15,000.00).

271. As a further actual and proximate or legal result of Defendant CCSD's acts, L.L. underwent medical treatment and incurred past medical and/or incidental expenses. L.L. may also require medical treatment in the future due to Defendant's intentional and negligent acts and may incur future medical and/or incidental expenses. The exact amount of such past and future damages is unknown at this present time, but L.L. alleges that she has suffered and/or will suffer special damages in excess of Fifteen Thousand Dollars ($15,000.00).

272. The acts, conduct, and omissions of Defendant CCSD alleged throughout this Complaint were fraudulent, willful, malicious, and oppressive, and were done with a conscious disregard for the rights and safety of L.L. and other students.

273. Defendant CCSD's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary, decent people, and was carried on by Defendant with willful and conscious disregard for the safety of L.L. and other disabled students in the State of Nevada, entitling L.L. to exemplary and punitive damages.

274.  The outrageous and unconscionable conduct of Defendant CCSD warrants an award of exemplary and punitive damages in an amount appropriate to punish Defendant CCSD and make an example of them, and to deter similar conduct in the future.

275.  Defendant CCSD's acts complained of herein, were willful, malicious, fraudulent, oppressive, and done in conscious disregard of L.L.'s rights, and L.L. is entitled to exemplary and punitive damages pursuant to NRS Chapter 42 and common law, for a sum in excess of Fifteen Thousand Dollars ($15,000.00), to be proven at the time of trial, together with prejudgment interest at the rate allowed by law.

276.  Defendant CCSD, acting under the color of law, has deprived L.L. of rights, privileges, or immunities secured to her by the Constitution of the United States of America and 42 U.S.C. § 1983.

277.  Defendant CCSD's actions have forced Plaintiff to retain counsel to represent her in the prosecution of this action, and she is therefore entitled to an award of a reasonable amount as attorney's fees and costs of suit.

### TWELFTH CLAIM FOR RELIEF

**(Violation of Constitutional Protections for Disabled Persons)**

**Against All Defendants**

278.  Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporate the same herein by reference.

279.  L.L. is a disabled person as defined in NRS 426.068.

280. Title II of the ADA, 42 U.S.C. § 12203(b), the regulations promulgated thereunder, and 28 C.F.R. Part 35, governing state and local governmental entities, protects persons from discrimination on the bases of disability by public entities like CCSD. The ADA prohibits the exclusion from participation in, or being denied the benefits of services, programs, or activities of the public entity, or being subjected to discrimination by such entity.

281. Article I, § 24 of the Nevada Constitution and Nevada statute protects persons from discrimination on the basis of disability by public entities like CCSD. Nevada law prohibits the exclusion from participation in, or being denied the benefits of the services, programs, or activities of the public entity, or being subjected to discrimination by such entity.

282. Pursuant to 42 U.S.C. § 12203(a), it is unlawful to discriminate against any individual because that individual, and/or his or her designated guardian(s)/natural parent(s), has opposed any act or practice made unlawful by Chapter 42 of the United States Code.

283. Pursuant to 42 U.S.C. § 12203(b), it is unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of any rights granted under Chapter 42 of the United States Code.

284. As set forth above, during the relevant time period, CCSD and its employees failed to protect L.L., placed a known abuser in a position of authority

over L.L., used corporal punishment on L.L., and failed to monitor, report, or stop the abuse, allowing it to continue.

285. The forms of abuse and negligence that were committed by the Defendants against L.L., as described herein, were not inflicted on children without disabilities who were also attending a public school in Clark County, Nevada, and thus violate the prohibition against discrimination based solely on the basis of disability.

286. Defendants, and each of them, have violated L.L.'s rights under the ADA and the regulations promulgated thereunder by committing the outrageous intentional acts and other acts of negligence described herein, denying L.L. the benefits of the services, programs, and activities to which she is otherwise entitled from CCSD.

287. Defendants' intentional and negligent acts are an actual and proximate or legal cause of L.L.'s injuries. L.L. thereby experienced great pain and anxiety to her body and mind, sustaining injuries and general damages in excess of Fifteen Thousand Dollars ($15,000.00).

288. As a further actual and proximate or legal result of the Defendants' intentional and negligent acts, L.L. underwent medical treatment and incurred past medical and/or incidental expenses. L.L. may also require medical treatment in the future due to Defendants' intentional and negligent acts and may incur future medical and/or incidental expenses. The exact amount of such past and future damages is unknown at this present time, but L.L. alleges that she has

- 59 -

suffered and/or will suffer special damages in excess of Fifteen Thousand Dollars ($15,000.00).

289. The acts, conduct, and omissions of CCSD, and its employees, as alleged throughout this Complaint were fraudulent, willful, malicious, and oppressive, and were done with a conscious disregard for the rights and safety of L.L. and other disabled students.

290. Defendants' conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary, decent people, and was carried on by the Defendants with willful and conscious disregard for the safety of L.L. and other students in the State of Nevada, entitling L.L. to exemplary and punitive damages.

291. The outrageous and unconscionable conduct of the Defendants warrants an award of exemplary and punitive damages in an amount appropriate to punish the Defendants and make an example of them, and to deter similar conduct in the future.

292. The acts of the Defendants complained of herein were willful, malicious, fraudulent, oppressive, and done in conscious disregard of L.L.'s rights, and L.L. is entitled to exemplary and punitive damages pursuant to NRS Chapter 42 and common law, for a sum in excess of Fifteen Thousand Dollars ($15,000.00), to be proven at the time of trial, together with prejudgment interest at the rate allowed by law.

293. Defendants, and each of them, acting under the color of law, have deprived L.L. of rights, privileges, or immunities secured to her by Article I, § 24

of the Nevada Constitution, the Constitution of the United States of America, and 42 U.S.C. § 1983.

294. The Defendants' actions have forced Plaintiff to retain counsel to represent her in the prosecution of this action, and she is therefore entitled to an award of a reasonable amount as attorney's fees and costs of suit.

## THIRTEENTH CLAIM FOR RELIEF
### (Abuse of a Vulnerable Person/Enhanced Damages)
### Against Roberta McIntyre

295. Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporate the same herein by reference.

296. At all times relevant to the allegations of this Complaint, L.L. was a "vulnerable person" according to Nevada law, in that she suffers from severe Autism Spectrum Disorder, a physical or mental impairment that substantially limits one or more of the major life activities of the person, and she has a medical or psychological records of impairment. NRS 41.1395(1)(e).

297. Because of the critical need to protect vulnerable persons from abuse and exploitation, the Nevada legislature has enacted a law that provides that if a vulnerable person suffers a personal injury or death that is caused by abuse or neglect, the person who caused the injury or death is liable to the vulnerable person for two times the actual damages incurred by the vulnerable person.

298. CCSD employee, McIntyre, committed an act of abuse against L.L., a vulnerable person on January 31, 2024, when she flipped a table that L.L. was standing on, throwing L.L. into the air and onto the floor, by grabbing and pulling

L.L. by the hair, and by throwing a 25-30 pound weighted backpack at L.L., each causing L.L. pain, physical injury, and severe mental anguish.

299. Defendant McIntyre acted with recklessness, oppression, fraud, and/or malice, in the acts of abuse she committed against L.L., and, pursuant to NRS 41.1395(2), the Court should order an award for all attorney's fees and costs incurred by L.L. in this proceeding.

300. This Court should enter an award of enhanced damages to L.L. pursuant to NRS 41.1395(1).

**FOURTEENTH CLAIM FOR RELIEF**

**(Violation of the Rehabilitation Act of 1973)**

**Against All Defendants**

301. Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporate the same herein by reference.

302. The Rehabilitation Act § 504 forbids organizations that receive federal funding, including public schools, from discriminating against people with disabilities. Section 504 provides that "[]no otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

303. At all times herein relevant, Defendant CCSD is and was a recipient of federal funding for its educational programs, activities and services. These programs include the subsidized school lunch program as well as funding for special education.

304. By virtue of her age and having been diagnosed as suffering from the condition of autism, L.L. is a qualified person with a disability.

305. As set forth above, during the relevant time period, CCSD and its employees failed to protect L.L., placed a known abuser in a position of authority over L.L., used corporal punishment on L.L., and failed to monitor, report, or stop the abuse, allowing it to continue.

306. The forms of abuse and negligence that were committed by the Defendants against L.L., as described herein, violate the prohibition against discrimination based solely on the basis of disability.

307. Defendant McIntyre believed she could abuse L.L. and get away with it, and did abuse L.L., because L.L. was disabled and would be unable to verbalize the abuse committed against her.

308. Defendant CCSD exhibited willful indifference to L.L.'s rights as a qualified student with a disability by failing to implement policies and procedures to ensure that allegations of neglect and abuse of students with disabilities were reported and investigated promptly in an objective and impartial manner.

309. Defendants, and each of them, have violated L.L.'s rights under the Rehabilitation Act § 504 by committing the outrageous intentional acts and other acts of negligence described herein, denying L.L. the benefits of the services, programs, and activities to which she is otherwise entitled from CCSD.

310. Defendants' intentional and negligent acts are an actual and proximate or legal cause of L.L.'s injuries. L.L. thereby experienced great pain

and anxiety to her body and mind, sustaining injuries and general damages in excess of Fifteen Thousand Dollars ($15,000.00).

311. As a further actual and proximate or legal result of the Defendants' intentional and negligent acts, L.L. underwent medical treatment and incurred past medical and/or incidental expenses. L.L. may also require medical treatment in the future due to Defendants' intentional and negligent acts and may incur future medical and/or incidental expenses. The exact amount of such past and future damages is unknown at this present time, but L.L. alleges that she has suffered and/or will suffer special damages in excess of Fifteen Thousand Dollars ($15,000.00).

312. The acts, conduct, and omissions of CCSD, and its employees, as alleged throughout this Complaint were fraudulent, willful, malicious, and oppressive, and were done with a conscious disregard for the rights and safety of L.L. and other students.

313. Defendants' conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary, decent people, and was carried on by the Defendants with willful and conscious disregard for the safety of L.L. and other students in the State of Nevada, entitling L.L. to exemplary and punitive damages.

314. The outrageous and unconscionable conduct of the Defendants warrants an award of exemplary and punitive damages in an amount appropriate to punish the Defendants and make an example of them, and to deter similar conduct in the future.

315. The acts of the Defendants complained of herein were willful, malicious, fraudulent, oppressive, and done in conscious disregard of L.L.'s rights, and L.L. is entitled to exemplary and punitive damages pursuant to NRS Chapter 42 and common law, for a sum in excess of Fifteen Thousand Dollars ($15,000.00), to be proven at the time of trial, together with prejudgment interest at the rate allowed by law.

316. The Defendants' actions have forced Plaintiff to retain counsel to represent her in the prosecution of this action, and she is therefore entitled to an award of a reasonable amount as attorney's fees and costs of suit.

## FIFTEENTH CLAIM FOR RELIEF
### (Violations of the Fourth Amendment's Protection Against Excessive Use Of Force)
### Defendant Roberta McIntyre

317. Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporate the same herein by reference.

318. At all times relevant herein, Defendant McIntyre acted under color of state law and color of authority.

319. L.L. has a right under the Fourth Amendment to the United States Constitution and Article 1 Section 18 of the Nevada Constitution to be free from unreasonable searches and seizures, including unreasonable seizures executed with excessive force.

- 65 -

320. Defendant Roberta McIntyre exercised arbitrary and excessive physical force via corporal punishment, abuse and harassment against L.L. as described herein.

321. Defendant Roberta McIntyre's arbitrary and excessive force constituted a seizure of L.L. within the meaning of the Fourth Amendment to the United States Constitution and Article 1 Section 18 of the Nevada Constitution.

322. Considering L.L.'s age, disability, size, vulnerabilities, the lack of severity of any alleged misbehavior, lack of resistance of evasion, the multitude of less intrusive alternatives available to Defendant Roberta McIntyre, the arbitrary and excessive nature of the force used in relation to the need to use any force at all, the duration and repetitive use of force and type of force applied, and punitive nature of the force used because of L.L.'s disability, all render Defendant Roberta McIntyre's arbitrary and excessive force objectively unreasonable under the circumstances.

323. As a direct and proximate result of Defendant Roberta McIntyre's arbitrary and excessive use of force through corporal punishment, L.L. suffered physical injuries, pain and suffering, emotional distress, psychological trauma, and other damages in excess of Fifteen Thousand Dollars ($15,000.00).

324. The outrageous and unconscionable conduct of Defendant Roberta McIntyre warrants an award of exemplary and punitive damages in an amount appropriate to punish and make an example of her, and to deter similar conduct in the future.

325. The acts of Defendant McIntyre complained of herein were willful, malicious, fraudulent, oppressive, and done in conscious disregard of L.L.'s Constitutional rights, and L.L. is entitled to exemplary and punitive damages pursuant to NRS Chapter 42 and common law, for a sum in excess of Fifteen Thousand Dollars ($15,000.00), to be proven at the time of trial, together with prejudgment interest at the rate allowed by law.

### SIXTEENTH CLAIM FOR RELIEF

### (Violation Article 1 Section 18 of the Nevada Constitution – Excessive Force)

### Defendant Roberta McIntyre

326. Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporate the same herein by reference.

327. At all times relevant herein, Defendant McIntyre acted under color of state law and color of authority.

328. L.L. has a right under Article 1 Section 18 of the Nevada Constitution to be free from unreasonable searches and seizures, including unreasonable seizures executed with excessive force.

329. Defendant Roberta McIntyre exercised arbitrary and excessive physical force via corporal punishment, abuse and harassment against L.L. as described herein.

330. Defendant Roberta McIntyre's arbitrary and excessive force constituted a seizure of L.L. within the meaning of Article 1 Section 18 of the Nevada Constitution.

- 67 -

331. Considering L.L.'s age, disability, size, vulnerabilities, the lack of severity of any alleged misbehavior, lack of resistance of evasion, the multitude of less intrusive alternatives available to Defendant Roberta McIntyre, the arbitrary and excessive nature of the force used in relation to the need to use any force at all, the duration and repetitive use of force and type of force applied, and punitive nature of the force used because of L.L.'s disability, all render Defendant Roberta McIntyre's arbitrary and excessive force objectively unreasonable under the circumstances.

332. As a direct and proximate result of Defendant Roberta McIntyre's arbitrary and excessive use of force through corporal punishment, L.L. suffered physical injuries, pain and suffering, emotional distress, psychological trauma, and other damages in excess of Fifteen Thousand Dollars ($15,000.00).

333. The outrageous and unconscionable conduct of Defendant Roberta McIntyre warrants an award of exemplary and punitive damages in an amount appropriate to punish and make an example of her, and to deter similar conduct in the future.

334. The acts of Defendant McIntyre complained of herein were willful, malicious, fraudulent, oppressive, and done in conscious disregard of L.L.'s Constitutional rights, and L.L. is entitled to exemplary and punitive damages pursuant to NRS Chapter 42 and common law, for a sum in excess of Fifteen Thousand Dollars ($15,000.00), to be proven at the time of trial, together with prejudgment interest at the rate allowed by law.

/ / /

## SEVENTEENTH CLAIM FOR RELIEF

## (Violations of the Fourth Amendment's Protection Against Excessive Use Of Force)

## Defendant CCSD – *Monell* Liability

335. Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporate the same herein by reference.

336. Defendant CCSD is a governmental entity and a "person" subject to liability under 42 U.S.C. § 1983.

337. Upon information and belief, Defendant CCSD maintained customs, policies, and practices that were the moving force behind the violation of L.L.'s constitutional rights, including but not limited to:

    a. A custom, policy, or practice of inadequate training of teachers and staff regarding the constitutional limits on the use of force against students;

    b. A custom, policy, or practice of inadequate supervision of teachers and staff in their interactions with students;

    c. A custom, policy, or practice of failing to discipline teachers and staff who use excessive force against students;

    d. A custom, policy, or practice of failing to investigate complaints of excessive force against students; and

    e. A custom, policy, or practice of tolerating, condoning, or ratifying the use of excessive force by teachers and staff against students.

- 69 -

338.   Upon information and belief, Defendant CCSD's customs, policies, and practices as described herein are evidenced by:

    a.   Repeated offenses of teachers and administrators in the same or similar position as Defendant Roberta McIntyre;

    b.   Defendant CCSD's knowledge of prior incidents through complaints, reports, or investigations, and the continued patterns of similar conduct;

    c.   Defendant Roberta McIntyre's conduct and behavior;

    d.   Defendant Monique Cleveland's conduct and behavior in failing to report as a mandated reporter;

    e.   Defendant CCSD being aware of the need for training or supervision and their subsequent deliberate indifference and/or failure to train, supervise, or otherwise act despite the likelihood of a Constitutional violation arising; and

    f.   Defendant CCSD's failure to take corrective actions against other employees engaging in the same or substantially similar conduct.

339.   Upon information and belief, Defendant CCSD's conduct was deliberately indifferent to the constitutional rights of L.L. and other disabled students. Defendant CCSD knew of the substantial risk of constitutional violations and consciously disregarded such risks.

340.   Defendant CCSD knew of the obvious need to train and supervise employees interacting with students with special needs such as L.L., as evidenced by the multitude of previous reports and investigations arising out of violative

conduct exhibited against disabled students, and Defendant CCSD disregarded such needs with the knowledge that such failure was obviously or likely to result in Constitutional violations.

341. Defendant CCSD knew of the obvious need to change policies or address de facto policies and customs, as evidenced by the previous reports and investigations arising out of the violative conduct exhibited against disabled students, and disregarded such obvious needs with the knowledge of the Constitutional risks arising out of the disregard.

342. Despite this knowledge, Defendant CCSD ignored the risks.

343. Upon information and belief, and alternatively, Defendant CCSD's constitutional violations resulted from a decision or action by a final policymaker.

344. All above referenced customs, policies, practices, ratifications, actions, omissions, and/or deliberate indifference of Defendant CCSD are the moving force behind and directly caused the violation of L.L.'s rights under the Fourth Amendment to the United States Constitution and Article 1 Section 18 of the Nevada Constitution.

345. As a direct and proximate result of Defendant CCSD's customs, policies, practices, ratifications, actions, omissions, and/or deliberate indifference, L.L. suffered physical injuries, pain and suffering, emotional distress, psychological trauma, and other damages in excess of Fifteen Thousand Dollars ($15,000.00).

346. The outrageous and unconscionable conduct of Defendant CCSD warrants an award of exemplary and punitive damages in an amount appropriate

- 71 -

to punish and make an example of them, and to deter similar conduct in the future.

347. The acts of Defendant CCSD complained of herein were willful, malicious, fraudulent, oppressive, and done in conscious disregard of L.L.'s Constitutional rights, and L.L. is entitled to exemplary and punitive damages pursuant to NRS Chapter 42 and common law, for a sum in excess of Fifteen Thousand Dollars ($15,000.00), to be proven at the time of trial, together with prejudgment interest at the rate allowed by law.

## EIGHTEENTH CLAIM FOR RELIEF

### (Fourteenth Amendment – Due Process – State Created Danger)

### Defendant Monique Cleveland

348. Plaintiffs repeat and reallege the allegations as contained in the preceding paragraphs herein and incorporate the same herein by reference.

349. Defendant Monique Cleveland's affirmative acts placed L.L. in a position of actual, particularized danger that is more dangerous than the position that L.L. already faced, or, in the alternative, created a danger that did not otherwise exist prior to her affirmative acts.

350. Defendant Monique Cleveland witnessed Defendant Roberta McIntyre's arbitrary and excessive corporal punishment, harassment, and abuse of L.L. and another disabled student as described herein.

351. Defendant Monique Cleveland subjectively knew of the danger Defendant Roberta McIntyre posed to L.L. because she witnessed arbitrary and

excessive corporal punishment, harassment, and abuse of another student and L.L. as described herein.

352. Defendant Monique Cleveland affirmatively acted by leaving the classroom and leaving L.L. with Defendant Roberta McIntyre.

353. Defendant Monique Cleveland's affirmative act created the danger by leaving L.L. alone with Defendant Roberta McIntyre without the calming effect of a second adult. In the alternative, Defendant Monique Cleveland exposed L.L. to a danger that she would not have otherwise faced by staying in the room and not having a calming effect on Defendant Roberta McIntyre.

354. Defendant Monique Cleveland knew that leaving the room placed L.L. in an increased danger of being subjected to further arbitrary and excessive corporal punishment, harassment, and abuse at the hands of Defendant Roberta McIntyre.

355. Defendant Monique Cleveland knew of the increased and foreseeable risks because Defendant Roberta McIntyre abused a disabled child previously, and punished L.L. because of her disability and because of the behaviors arising out of L.L.'s disability. Defendant Monique Cleveland knew that L.L.'s disability and the behaviors arising out of her disability would not suddenly disappear. Defendant Monique Cleveland also knew that Defendant Roberta McIntyre's malicious and shocking conduct would continue because of L.L.'s behavior and disability.

356. A reasonable person in Defendant Monique Cleveland's position would have appreciated the increased risk of leaving the room. A reasonable

person in that position would have recognized that the affirmative act of leaving the room would leave L.L., a disabled child receiving punishment with arbitrary and excessive force because of her disability and behaviors arising out of her disability, and exposed that child to further abuse and inhumane corporal punishment because of her behaviors and disability.

357. Despite this knowledge, Defendant Monique Cleveland ignored the foreseeable risks posed by leaving the room and exposed L.L. to Defendant Roberta McIntyre's violative conduct.

358. In fact, upon Defendant Monique Cleveland's return to the room, Defendant Roberta McIntyre was engaged in further arbitrary and excessive corporal punishment, harassment, and abuse of L.L. as described herein.

WHEREFORE, Plaintiff, L.L., a minor by and through her natural parents, DANIELLE B. BUCKLAND and HEBER C. LANE, expressly reserving her right to amend this Complaint at the time of trial, to include all items of damage not yet ascertained, demands judgment against Defendants, CLARK COUNTY SCHOOL DISTRICT; ROBERTA MCINTYRE, individually and in her capacity as Plaintiff's former teacher; MONIQUE CLEVELAND, individually and in her capacity as Plaintiff's former teacher; DOES I-X; and ROE BUSINESS ENTITIES XI-XX, inclusive, as follows:

1. For general damages in excess of Fifteen Thousand Dollars ($15,000.00), to be set forth and proven at the time of trial;

2. For special damages in excess of Fifteen Thousand Dollars ($15,000.00), to be set forth and proven at the time of trial;

- 74 -

3. For exemplary and punitive damages in excess of Fifteen Thousand Dollars ($15,000.00), to be set forth and proven at the time of trial;

4. For reasonable attorney's fees;

5. For costs of suit incurred;

6. For prejudgment interest

7. For a jury trial on all issues so triable; and

8. For such other relief as to the Court seems just and proper.

Dated this ___ day of April 2026.

CLAGGETT & SYKES LAW FIRM

*/s/ Brian Blankenship*

_____

Brian Blankenship, Esq.
Nevada Bar No. 11522
*Attorneys for Plaintiff*

- 75 -

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the ___ day of April 2026, I caused to be served a true and correct copy of the foregoing **FIRST AMENDED COMPLAINT** on the following person(s) via the United States District Court's CM/ECF system:

**VIA E-SERVICE ONLY:**
Thomas D. Dillard, JR., Esq.
OLSON CANNON & GORMLEY
9950 W. Cheyenne Avenue
Las Vegas, Nevada 89129
*Attorneys for Defendants*
*Clark County and Monique Cleveland*

Lisa J. Zastrow, Esq.
GARIN LAW GROUP
9900 Covington Cross Drive, Suite 210
Las Vegas, Nevada 89144
*Attorney for Defendant Roberta McIntyre*


/s/ *Maria Alvarez-Willson*
Employee of Claggett & Sykes Law Firm

- 76 -

# EXHIBIT 1

GPA
STEVEN B. WOLFSON
Clark County District Attorney
Nevada Bar #1565
SAMMY CAREY LAMB
Deputy District Attorney
Nevada Bar #15946
200 Lewis Avenue
Las Vegas, NV 89155
PH: (702) 671-2500
FAX: (702) 868-2412
DAInfo@clarkcountydanv.gov
Attorney for the Plaintiff

FILED IN OPEN COURT
STEVEN D. GRIERSON
CLERK OF THE COURT

JAN 0 6 2025

BY, _____
PATIA CUNNINGHAM, DEPUTY

## DISTRICT COURT

## CLARK COUNTY, NEVADA

THE STATE OF NEVADA,

        Plaintiff,

-vs-

ROBERTA MC INTYRE
#7136745

        Defendant.

CASE NO:   C-24-384171-1

DEPT NO:   XXVIII

## GUILTY PLEA AGREEMENT

I hereby agree to plead guilty to the charge(s) listed below, as more fully alleged in the charging document attached hereto:

**CHILD ABUSE, NEGLECT, OR ENDANGERMENT (Gross Misdemeanor - NRS 200.508.1 - NOC 55239)**

My decision to plead guilty is based upon the plea agreement in this case which is as follows:

The State has no opposition to probation as long as Defendant is not deemed a high risk to reoffend. Both parties retain the right to argue terms and conditions of probation. Defendant agrees to have no contact with L.L. or her family.

All remaining counts contained in the Criminal Complaint which were bound over to District Court shall be dismissed when Defendant is adjudged guilty and sentenced.

C-24-384171-1
GPA
Guilty Plea Agreement
5114602

I agree to the forfeiture of any and all electronic storage devices, computers, and/or related equipment and/or weapons or any interest in any electronic storage devices, computers and/or related equipment and/or weapons seized and/or impounded in connection with the instant case and/or any other case negotiated in whole or in part in conjunction with this plea agreement.

I understand and agree that, if I fail to interview with the Department of Parole and Probation, fail to appear at any subsequent hearings in this case, or an independent magistrate, by affidavit review, confirms probable cause against me for new criminal charges including reckless driving or DUI, but excluding minor traffic violations, the State will have the unqualified right to argue for any legal sentence and term of confinement allowable for the crime(s) to which I am pleading guilty, including the use of any prior convictions I may have to increase my sentence as an habitual criminal to five (5) to twenty (20) years, life without the possibility of parole, life with the possibility of parole after ten (10) years, or a definite twenty-five (25) year term with the possibility of parole after ten (10) years.

Otherwise I am entitled to receive the benefits of these negotiations as stated in this plea agreement.

## CONSEQUENCES OF THE PLEA

I understand that by pleading guilty I admit the facts which support all the elements of the offense(s) to which I now plead as set forth in the charging document attached hereto.

I understand that as a consequence of my plea of guilty as to CHILD ABUSE, NEGLECT, OR ENDANGERMENT, I may be imprisoned in the Clark County Detention Center for a period of not more than three hundred sixty-four (364) days and that I may be fined up to $2,000.00.

I understand that the law requires me to pay an Administrative Assessment Fee(s).

I understand that, if appropriate, I will be ordered to make restitution to the victim of the offense(s) to which I am pleading guilty and to the victim of any related offense which is being dismissed or not prosecuted pursuant to this agreement. I will also be ordered to reimburse the State of Nevada for any expenses related to my extradition, if any.

2

I understand that I am eligible for probation for the offense(s) to which I am pleading guilty. I understand that, except as otherwise provided by statute, the question of whether I receive probation is in the discretion of the sentencing judge.

I understand that I am not eligible for probation pursuant to NRS 176A.110 unless a psychologist licensed to practice in this State who is trained to conduct psychosexual evaluations or a psychiatrist licensed to practice medicine in this State who is certified by the American Board of Psychiatry and Neurology, Inc., and is trained to conduct psychosexual evaluations certifies in a written report to the court that I do not represent a high risk to reoffend based upon a currently accepted standard of assessment. I understand that, except as otherwise provided by statute, the question of whether I receive probation is in the discretion of the sentencing judge. I understand that my attorney is responsible for obtaining this danger evaluation and providing it to the Court and the assigned Deputy District Attorney prior to my sentencing.

I understand that I must submit to blood and/or saliva tests under the Direction of the Division of Parole and Probation to determine genetic markers and/or secretor status.

I understand that if I am pleading guilty to charges of Burglary, Invasion of the Home, Possession of a Controlled Substance with Intent to Sell, Sale of a Controlled Substance, or Gaming Crimes, for which I have prior felony conviction(s), I will not be eligible for probation and may receive a higher sentencing range.

I understand that if more than one sentence of imprisonment is imposed and I am eligible to serve the sentences concurrently, the sentencing judge has the discretion to order the sentences served concurrently or consecutively.

I understand that information regarding charges not filed, dismissed charges, or charges to be dismissed pursuant to this agreement may be considered by the judge at sentencing.

I have not been promised or guaranteed any particular sentence by anyone. I know that my sentence is to be determined by the Court within the limits prescribed by statute.

I understand that if my attorney or the State of Nevada or both recommend any specific punishment to the Court, the Court is not obligated to accept the recommendation.

3

I understand that if the offense(s) to which I am pleading guilty was committed while I was incarcerated on another charge or while I was on probation or parole that I am not eligible for credit for time served toward the instant offense(s).

I understand that if I am not a United States citizen, any criminal conviction will likely result in serious negative immigration consequences including but not limited to:

1.    The removal from the United States through deportation;

2.    An inability to reenter the United States;

3.    The inability to gain United States citizenship or legal residency;

4.    An inability to renew and/or retain any legal residency status; and/or

5.    An indeterminate term of confinement, with the United States Federal Government based on my conviction and immigration status.

Regardless of what I have been told by any attorney, no one can promise me that this conviction will not result in negative immigration consequences and/or impact my ability to become a United States citizen and/or a legal resident.

I understand that the Division of Parole and Probation will prepare a report for the sentencing judge prior to sentencing. This report will include matters relevant to the issue of sentencing, including my criminal history. This report may contain hearsay information regarding my background and criminal history. My attorney and I will each have the opportunity to comment on the information contained in the report at the time of sentencing. Unless the District Attorney has specifically agreed otherwise, the District Attorney may also comment on this report.

## WAIVER OF RIGHTS

By entering my plea of guilty, I understand that I am waiving and forever giving up the following rights and privileges:

1.    The constitutional privilege against self-incrimination, including the right to refuse to testify at trial, in which event the prosecution would not be allowed to comment to the jury about my refusal to testify.

2.    The constitutional right to a speedy and public trial by an impartial jury, free of excessive pretrial publicity prejudicial to the defense, at which trial I would be entitled to the assistance of an attorney, either appointed

4

or retained. At trial the State would bear the burden of proving beyond a reasonable doubt each element of the offense(s) charged.

3. The constitutional right to confront and cross-examine any witnesses who would testify against me.

4. The constitutional right to subpoena witnesses to testify on my behalf.

5. The constitutional right to testify in my own defense.

6. The right to appeal the conviction or resulting sentence with the assistance of an attorney, either appointed or retained, unless specifically reserved in writing and agreed upon as provided in NRS 174.035(3). I understand this means I am unconditionally waiving my right to a direct appeal of this prosecution, conviction, or any aspect of the resulting sentence, including any challenge based upon reasonable constitutional, jurisdictional or other grounds that challenge the legality of the proceedings as stated in NRS 177.015(4). However, I remain free to challenge my conviction through other post-conviction remedies including a habeas corpus petition pursuant to NRS Chapter 34.

## VOLUNTARINESS OF PLEA

I have discussed the elements of all of the original charge(s) against me with my attorney and I understand the nature of the charge(s) against me.

I understand that the State would have to prove each element of the charge(s) against me at trial.

I have discussed with my attorney any possible defenses, defense strategies and circumstances which might be in my favor.

All of the foregoing elements, consequences, rights, and waiver of rights have been thoroughly explained to me by my attorney.

I believe that pleading guilty and accepting this plea bargain is in my best interest, and that a trial would be contrary to my best interest.

I am signing this agreement voluntarily, after consultation with my attorney, and I am not acting under duress or coercion or by virtue of any promises of leniency, except for those set forth in this agreement.

I am not now under the influence of any intoxicating liquor, a controlled substance or other drug which would in any manner impair my ability to comprehend or understand this agreement or the proceedings surrounding my entry of this plea.

5

My attorney has answered all my questions regarding this guilty plea agreement and its consequences to my satisfaction and I am satisfied with the services provided by my attorney.

DATED this ____ day of January, 2025.

_____
ROBERTA MC INTYRE
Defendant

AGREED TO BY:

_____
Sammy Carey Lamb
Deputy District Attorney
Nevada State Bar No. 15946

6

## CERTIFICATE OF COUNSEL:

I, the undersigned, as the attorney for the Defendant named herein and as an officer of the court hereby certify that:

1. I have fully explained to the Defendant the allegations contained in the charge(s) to which guilty pleas are being entered.

2. I have advised the Defendant of the penalties for each charge and the restitution that the Defendant may be ordered to pay.

3. I have inquired of Defendant facts concerning Defendant's immigration status and explained to Defendant that if Defendant is not a United States citizen any criminal conviction will most likely result in serious negative immigration consequences including but not limited to:

   a. The removal from the United States through deportation;

   b. An inability to reenter the United States;

   c. The inability to gain United States citizenship or legal residency;

   d. An inability to renew and/or retain any legal residency status; and/or

   e. An indeterminate term of confinement, by with United States Federal Government based on the conviction and immigration status.

   Moreover, I have explained that regardless of what Defendant may have been told by any attorney, no one can promise Defendant that this conviction will not result in negative immigration consequences and/or impact Defendant's ability to become a United States citizen and/or legal resident.

4. All pleas of guilty offered by the Defendant pursuant to this agreement are consistent with the facts known to me and are made with my advice to the Defendant.

5. To the best of my knowledge and belief, the Defendant:

   a. Is competent and understands the charges and the consequences of pleading guilty as provided in this agreement,

   b. Executed this agreement and will enter all guilty pleas pursuant hereto voluntarily, and

   c. Was not under the influence of intoxicating liquor, a controlled substance or other drug at the time I consulted with the Defendant as certified in paragraphs 1 and 2 above.

Dated: This ___6___ day of January, 2025.

JUSTIN WILSON

sl/L3

7

INFM
STEVEN B. WOLFSON
Clark County District Attorney
Nevada Bar #1565
SAMMY CAREY LAMB
Deputy District Attorney
Nevada Bar #15946
200 Lewis Avenue
Las Vegas, NV 89155
PH: (702) 671-2500
FAX: (702) 868-2412
DAInfo@clarkcountydanv.gov
Attorney for the Plaintiff

## DISTRICT COURT

## CLARK COUNTY, NEVADA

THE STATE OF NEVADA,

Plaintiff,

-vs-

ROBERTA MC INTYRE #7136745

Defendant.

CASE NO:   C-24-384171-1

DEPT NO:   XXVIII

## I N F O R M A T I O N

STEVEN B. WOLFSON, District Attorney within and for the County of Clark, State of Nevada, in the name and by the authority of the State of Nevada, informs the Court:

That the Defendant(s) above named, within the County of Clark, State of Nevada, on or about February 1, 2024, committed one or more of the following crime(s), as follows to wit:

**CHILD ABUSE, NEGLECT, OR ENDANGERMENT, (Gross Misdemeanor - NRS 200.508.1 - NOC 55239).**

ROBERTA MCINTYRE did willfully and unlawfully, being responsible for the safety or welfare of a child under the age of 18 years, directly cause L.L., being approximately six (6) year(s) of age, to suffer unjustifiable physical pain and mental suffering as the result of abuse or neglect, to suffer mental injury of a nonaccidental nature, to be placed in a situation where L.L. suffered unjustifiable physical pain and mental suffering as the result of abuse or neglect, and physical injury of a nonaccidental nature, by hitting and striking L.L. and causing L.L. to hit and strike the floor; to wit: Roberta McIntyre while working as a Substitute on

Special Assignment (SOSA) (i.e., substitute teacher) at Robert E. Lake Elementary School, located at 2904 S. Meteoro Street, Las Vegas, Nevada 89169, being responsible for the safety and care of the child, did grab a table that L.L. was standing on and thrusted the table into the air, causing L.L. to strike the floor and hit her knee; grabbed L.L. by the hair on the top of her head, pulled her by the hair, and taunted L.L. until L.L. began screaming from the pain; and forced L.L. to wear a heavy backpack that weighed approximately twenty-five (25) to thirty (30) pounds in order to get L.L. to remain seated, struggled with L.L. while she was wearing the heavy backpack causing her to fall off her chair onto the floor, and threw the heavy backpack at L.L., while on the floor, hitting L.L. in the face, neck, and chest with the heavy backpack.

All of which is contrary to the form, force and effect of statutes in such cases made and provided, and against the peace and dignity of the State of Nevada.

STEVEN B. WOLFSON
Clark County District Attorney


BY   _Sammy Carey Lamb_

SAMMY CAREY LAMB
Deputy District Attorney
Nevada Bar #15946

24CR008496/sl/L3
CCSD EV# 24013456
(TK16)

2

# EXHIBIT 2

INFM
STEVEN B. WOLFSON
Clark County District Attorney
Nevada Bar #1565
SAMMY CAREY LAMB
Deputy District Attorney
Nevada Bar #15946
200 Lewis Avenue
Las Vegas, NV 89155
PH: (702) 671-2500
FAX: (702) 868-2412
DAInfo@clarkcountydanv.gov
Attorney for the Plaintiff

FILED IN OPEN COURT
STEVEN D. GRIERSON
CLERK OF THE COURT

JAN 0 6 2025

BY, _____
PATIA CUNNINGHAM, DEPUTY

## DISTRICT COURT

## CLARK COUNTY, NEVADA

THE STATE OF NEVADA,

Plaintiff,

-vs-

ROBERTA MC INTYRE #7136745

Defendant.

CASE NO:   C-24-384171-1

DEPT NO:   XXVIII

AMENDED
**I N F O R M A T I O N**

STEVEN B. WOLFSON, District Attorney within and for the County of Clark, State of Nevada, in the name and by the authority of the State of Nevada, informs the Court:

That the Defendant(s) above named, within the County of Clark, State of Nevada, on or about February 1, 2024, committed one or more of the following crime(s), as follows to wit:

**CHILD ABUSE, NEGLECT, OR ENDANGERMENT, (Gross Misdemeanor - NRS 200.508.1 - NOC 55239).**

ROBERTA MCINTYRE did willfully and unlawfully, being responsible for the safety or welfare of a child under the age of 18 years, directly cause L.L., being approximately six (6) year(s) of age, to suffer unjustifiable physical pain and mental suffering as the result of abuse or neglect, to suffer mental injury of a nonaccidental nature, to be placed in a situation where L.L. suffered unjustifiable physical pain and mental suffering as the result of abuse or neglect, and physical injury of a nonaccidental nature, by hitting and striking L.L. and causing L.L. to hit and strike the floor; to wit: Roberta McIntyre while working as a Substitute on

C-24-384171-1
AINF
Amended Information
6114603



Special Assignment (SOSA) (i.e., substitute teacher) at Robert E. Lake Elementary School, located at 2904 S. Meteoro Street, Las Vegas, Nevada 89169, being responsible for the safety and care of the child, did grab a table that L.L. was standing on and thrusted the table into the air, causing L.L. to strike the floor and hit her knee; grabbed L.L. by the hair on the top of her head, pulled her by the hair, and taunted L.L. until L.L. began screaming from the pain; and forced L.L. to wear a heavy backpack that weighed approximately twenty-five (25) to thirty (30) pounds in order to get L.L. to remain seated, struggled with L.L. while she was wearing the heavy backpack causing her to fall off her chair onto the floor, and threw the heavy backpack at L.L., while on the floor, hitting L.L. in the face, neck, and chest with the heavy backpack.

All of which is contrary to the form, force and effect of statutes in such cases made and provided, and against the peace and dignity of the State of Nevada.

STEVEN B. WOLFSON
Clark County District Attorney

BY    _Sammy Carey Lamb_
———————————————————
SAMMY CAREY LAMB
Deputy District Attorney
Nevada Bar #15946

24CR008496/sl/L3
CCSD EV# 24013456
(TK16)

2

# EXHIBIT 3

Electronically Filed
03/03/2025 1:24 PM

CLERK OF THE COURT

**JOC**

DISTRICT COURT

CLARK COUNTY, NEVADA

THE STATE OF NEVADA,

          Plaintiff,

    -vs-

ROBERTA MC INTYRE,
#7136745

          Defendant.

CASE NO:    C-24-384171-1

DEPT NO:    XXVIII

**JUDGMENT OF CONVICTION**

**(PLEA OF GUILTY)**

The defendant previously appeared before the Court with counsel and entered a plea of guilty to the crime(s) of CHILD ABUSE NEGLECT OR ENDANGERMENT (Gross Misdemeanor), in violation of NRS 200.508.1; thereafter, on the 19th day of February, 2025, the defendant was present in court for sentencing with counsel, JUSTIN WILSON Esq., and good cause appearing,

THE DEFENDANT WAS HEREBY ADJUDGED guilty of said offense(s) and, in addition to the $25.00 Administrative Assessment fee, $60.00 Drug Analysis fee, $150.00 DNA Analysis fee including testing to determine genetic markers, and $3.00 DNA Collection Fee, Deft. SENTENCED to THREE HUNDRED SIXTY-FOUR (364) DAYS in the Clark County Detention Center (CCDC) with THREE (3) DAYS credit for time served, SUSPENDED; placed on PROBATION for an indeterminate period not to exceed FIVE (5) YEARS.

STANDARD CONDITIONS

Statistically closed: A. USJR - CR - Guilty Plea With Sentence (Before trial) (USGPB)

1. Reporting: You are to report in person to the Division of Parole and Probation as instructed by the Division or its agent. You are required to submit a written report each month on forms supplied by the Division. This report shall be true and correct in all respects.

2. Residence: You shall not change your place of residence without first obtaining permission from the Division of Parole and Probation, in each instance.

3. Intoxicants: You shall not consume any alcoholic beverages whatsoever. Upon order of the Division of Parole and Probation or its agent, you shall submit to a medically recognized test for blood/breath alcohol content. Test results of .08 blood alcohol content or higher shall be sufficient proof of excess.

4. Controlled Substances: You shall not use, purchase or possess any illegal drugs, or any prescription drugs, unless first prescribed by a licensed medical professional. You shall immediately notify the Division of Parole and Probation of any prescription received. You shall submit to drug testing as required by the Division or its agent.

5. Weapons: You shall not possess, have access to, or have under your control, any type of weapon.

6. Search: You shall submit your person, property, place of residence, vehicle or areas under your control to search including electronic surveillance or monitoring of your location, at any time, with or without a search warrant or warrant of arrest, for evidence of a crime or violation of probation by the Division of Parole and Probation or its agent

7. Associates: You must have prior approval by the Division of Parole and Probation to associate with any person convicted of a felony, or any person on probation or parole supervision. You shall not have any contact with persons confined in a correctional institution unless specific written permission has been granted by the Division and the correctional institution.

8. Directives and Conduct: You shall follow the directives of the Division of Parole and Probation and your conduct shall justify the opportunity granted to you by this community supervision.

9. Laws: You shall comply with all municipal, county, state, and federal laws and ordinances.

10. Out-of-State Travel: You shall not leave the state without first obtaining written permission from the Division of Parole and Probation.

11. Employment/Program: You shall seek and maintain legal employment, or maintain a program approved by the Division of Parole and Probation and not change such employment or program without first obtaining permission. All terminations of employment or program shall be immediately reported to the Division.

12. Financial Obligation: You shall pay fees, fines, and restitution on a schedule approved by the Division of Parole and Probation (P&P). Any excess monies paid will be applied to any other outstanding fees, fines, and/or restitution, even if it is discovered after your discharge.

SPECIAL CONDITIONS

1. Deft. no longer allowed to teach children under the age of 14.

2. Complete a six month anger management course.

FURTHER Deft. to report to P&P within 48 hours. BOND, if any, EXONERATED.

**Dated this 3rd day of March, 2025**

**2DA 680 F9A6 434A**
**Ronald J. Israel**
**District Court Judge**

pc                              C-24-384171-1

3

**CSERV**

DISTRICT COURT
CLARK COUNTY, NEVADA

| | |
|---|---|
| State of Nevada | CASE NO: C-24-384171-1 |
| vs | DEPT. NO.  Department 28 |
| Roberta Mc Intyre | |

## <u>AUTOMATED CERTIFICATE OF SERVICE</u>

This automated certificate of service was generated by the Eighth Judicial District Court. The foregoing Judgment of Conviction was served via the court's electronic eFile system to all recipients registered for e-Service on the above entitled case as listed below:

Service Date: 3/3/2025

D A                            motions@ClarkcountyDA.com

Justin Wilson                  Justin@coxandwilson.com